630 S.E.2d 265

Nancy S. **LAYMAN**, David M. Fitzgerald, Vicki K. Zelenko, Wyman M. Looney and Nancy Ahrens, on behalf of themselves and all others similarly situated, Petitioners,

v.

The **STATE** of South Carolina and The South Carolina Retirement System, Respondents.

No. 26146.

Supreme Court of South Carolina.

Heard Dec. 1, 2005.

Decided May 4, 2006.

Order Denying Rehearing June 1, 2006.

A. Camden Lewis, Keith M. Babcock, and William E. McKinnon, all of Lewis & Babcock, of Columbia; and Richard A. Harpootlian, of Columbia, for Petitioners.

Stephen Van Camp and Sarah G. Major, of Columbia; and Thornwell F. Sowell, Robert E. Stepp, Roland M. Franklin, Jr., and Tina Cundari, all of Sowell Gray Stepp Todd & Laffitte, of Columbia, for Respondents.

Andrew F. Lindemann and William H. Davidson, III, of Davidson Morrison & Lindemann, of Columbia, for Amicus Curiae State Retirees Association.

Eric C. Schweitzer, of Ogletree Deakins Nash Smoak & Stewart, of Columbia, for Amicus Curiae South Carolina Chamber of Commerce.

Philip J. Mace, of Columbia, for Amicus Curiae State Employees Association.

Chief Justice TOAL:

Petitioners [1] brought this action in response to the enactment on July 1, 2005 of the State Retirement System Preservation and Investment Reform Act [2] (Act 153). Act 153 amends several statutes relating to the operation of the South Carolina Retirement System. Specifically, Act 153 brought about significant changes for employees who participate in TERI. [3] In addition, Act 153 affected employees who are not TERI participants but have retired and returned to work for the State in positions covered by the retirement system (working retiree program). [4]

In January of 2001, the South Carolina General Assembly enacted the Teacher and Employee Retention Incentive Pro-

---

1. Petitioners consist of a class defined as:

   All persons currently employed by an employer participating in the South Carolina Retirement System who elected prior to July 1, 2005, the effective date of Act 153, to participate in the Teacher and Employee Retention Incentive Program (TERI) pursuant to S.C.Code Ann. § 9–1–2210, et seq., as well as all retired members of the System who have returned to employment covered by the System prior to July 1, 2005, and are not currently TERI participants.

2. Act No. 153, 2005 S.C. Acts 1697.

3. The TERI program is codified at S.C.Code Ann. § 9–1–2210 (Supp. 2004).

4. Terms of employment for Retiree participants are codified at S.C.Code Ann. § 9–1–1790 (Supp.2004).

gram (TERI). Hereinafter, we will refer to this statute as "old TERI." In addition, we will refer to those who elected to participate in the old TERI program before July 1, 2005 as "old TERI participants." Further, those eligible to retire but not participating in TERI could participate in the working retiree program. We will refer to this program as the "old working retiree program" and its participants as "old working retirees."

Pursuant to the old TERI program, old TERI participants could retire, but continue to work for the State for up to five years following their retirement. During these five years, the State withheld the normal pension benefits due to old TERI participants. Under the old TERI program the State paid these accrued benefits either as a lump sum at the end of five years or the old TERI participant could roll the accrued benefits over into a qualifying retirement fund. Under the old TERI statute, an old TERI participant made no further employee contributions to the retirement system. In return, the State was able to utilize experienced, well-trained employees for up to five years after they retired. In addition, the old TERI participants did not accrue further service credit during their participation in the old TERI program and were not eligible for group life insurance or disability retirement benefits.

In contrast, under the old working retiree statute, the statute considered a working retiree to be retired and did not require the old working retiree to make further employee contributions to the system. However, the old working retiree statute limited the old working retiree to making no more than $50,000 per year in salary.

Petitioners (old TERI program participants and old working retiree participants) who retired before July 1, 2005 under the old TERI program or pursuant to the old working retiree statute brought this action against the State of South Carolina and South Carolina Retirement System (Respondents or the State), alleging breach of contract. In addition, the old TERI program participants and old working retiree participants argue the State should be estopped from retroactively applying new legislation to Petitioners. Finally, the old TERI program participants and old working retiree participants

claim violations of the Takings and Due Process Clauses of the State and Federal Constitutions. This Court granted Petitioners' request for the case to be heard in the Court's original jurisdiction. We hold that the State unlawfully breached its contract with those Petitioners participating in the old TERI program. In addition, we remand the old working retiree participants' breach of contract claim to the trial court for action consistent with this opinion.

### FACTUAL / PROCEDURAL BACKGROUND

The portion of Act 153 at the center of this controversy pertains to a financial contribution that old TERI and old working retiree participants are now required to submit to the retirement system. The changes wrought by Act 153 dramatically alter the former versions of the TERI and working retiree statutes. Under the prior enactment of the TERI and working retiree programs, neither the old TERI participants nor the old working retiree participants were required to contribute to the retirement system. Under the terms of the prior programs, for all intents and purposes, both the old TERI participants and the old working retiree participants were considered to be retired.

Petitioners claim that the requirement that they now contribute 6.25% of their annual salary to the retirement program constitutes a breach of contract.[5] In the alternative, if no contract is found, Petitioners assert that the State should be estopped from requiring further contributions due to Petitioners' reliance on the terms of the former TERI and working retiree programs. Further, Petitioners claim that the enactment of Act 153 constitutes an unconstitutional taking and a deprivation of their property without due process of law.

Previously, Petitioners sought a temporary restraining order seeking to enjoin the State from collecting Petitioners' contributions to the retirement system. The circuit court granted the motion, preventing the State from collecting contributions from the four named Petitioners in this case. Respondents appealed and petitioned for a writ of supersedeas. However, while the motions were pending in the circuit court, the case was certified to the Supreme Court pursuant to Rule

---

5. The contribution will increase to 6.5% in 2006.

204(b), SCACR. As a result, Petitioners filed a petition for original jurisdiction.

This Court denied the State's petition for supersedeas, but granted the petition for original jurisdiction. In addition, Petitioners filed a motion for class certification, which the Court granted. The class was deemed to consist of all participants who had retired under the old TERI program under the former version of § 9–1–2210, and all those participants considered old working retirees under the previous version of § 9–1–1790; all of whom elected to participate in the programs before July 1, 2005. Further, the Court ordered all contributions withdrawn from the class members be transferred into an interest bearing account and escrowed pending the outcome of this litigation. As a result, the following issues are before the Court:

I. Do the statutory provisions of the former versions of the TERI and the working retiree programs create contracts?

II. Is the State estopped from requiring Petitioners to make contributions to the retirement system?

III. Does the enactment of Act 153 constitute an unconstitutional taking under either the State or Federal Constitution?

IV. Does Act 153 violate the Due Process Clause of the State or Federal Constitution?

### LAW / ANALYSIS

### I. Breach of Contract

### A. TERI Program

Old TERI program participants argue that the statutory provisions governing old TERI participants created contracts which the State breached by requiring previously enrolled TERI participants to contribute to the retirement system. We agree.

Generally, statutes do not create contractual rights. *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). However, if the statute indicates that the legislature

intended to bind itself contractually, a contract may be found to exist. *Id.* In South Carolina, contractual rights are created by statute only when they are expressly found in the language of the legislation. *See S.C. Public Serv. Auth. v. Summers,* 282 S.C. 148, 318 S.E.2d 113 (1984).

■ With the above guidelines in mind, we turn to the prior version of the TERI statute, enacted in 2001, to determine if a contract existed. In the present case, the relevant portions of the prior statute provide that a member of the State Retirement System eligible to retire may:

[e]lect to participate in the Teacher and Employee Retention Incentive Program (program). A member electing to participate in the program retires for purposes of the system, and the member's normal retirement benefit is calculated on the basis of the member's average final compensation and service credit at the time the program period begins. *The program participant shall agree to continue employment with an employer participating in the system for a program period, not to exceed five years.*

. . . .

(B) During the specified program period, receipt of the member's normal retirement benefit is deferred. The member's deferred monthly benefit must be placed in the system's trust fund on behalf of the member. No interest is paid on the member's deferred monthly benefit placed in the system's trust fund during the specified program period.

. . . .

(D) *A program participant is retired from the retirement system as of the beginning of the program period. A program participant makes no further employee contributions to the system, accrues no service credit during the program period, and is not eligible to receive group life insurance benefits or disability retirement benefits.* Accrued annual leave and sick leave used in any manner in the calculation of the program participant's retirement benefit is deducted from the amount of such leave accrued by the participant.

S.C.Code Ann. § 9–1–2210 (Supp.2004) (emphasis added).

In sum, the above former statutory authority (old TERI) provided a means for eligible employees to retire, but continue

to work subject to several limitations. Under the old TERI program, an employee could retire, but continue to work for an additional five years after retirement. Instead of receiving their retirement check, the old TERI program participants' retirement money was placed in a non-interest bearing account to be paid out at the end of the five-year program period. During the five year period, under the prior statute, the employees were deemed retired and made no further contributions to the retirement system out of their paycheck. In addition, old TERI program participants gave up the opportunity to accrue further service credit, thus, any increase in salary would not result in an increase in retirement benefits. In return, the State was able to retain a large number of experienced and well-trained employees for a period not to exceed five years.

As a result of the enactment of Act 153, old TERI participants are now required "to pay to the system the employee contribution as if a program participant were an active contributing member," while gaining no additional service credit. Act No. 153, 2005 S.C. Acts 1697.

We hold that the language in the old TERI statute demonstrates, in unambiguous terms, the intent of the legislature to bind itself to the terms in the statute. We find it telling that the legislature used terms that are indicative of a contract: "A ... member who is *eligible* [to retire under TERI] ... and *complies* with the *requirements* of this article .... *shall agree* ...." S.C.Code Ann. § 9–1–2210(A) (emphasis added). Far from simply describing the terms of old TERI participants' employment, the former TERI statute outlined an employment program in which those employees eligible for retirement could enroll for a fixed period of time up to five years.[6] The old TERI statute fixed obligations, required affirmative actions by both the State and old TERI program participants, and contained contractually significant language.

---

6. Most of the TERI participants are continuing contract teachers and each year the employment contracts of the participants in TERI are subject to renewal, unless the teacher is fired for cause. But the TERI program was available for those employees eligible to participate for up to five years. *See* S.C.Code Ann. § 59–26–40 (Supp.2004) (explaining the various contract levels for teachers).

■■■ We next consider whether there was a breach of the agreement. When the State, through Act 153, sought to collect retirement contributions from the old TERI participants, it was in clear breach of the contract it created by the relevant statutes. Once the bargain is formed, and the obligations set, a contract may only be altered by mutual agreement and for further consideration. We find that, as applied to old TERI participants, the enactment of Act 153 constitutes a breach of contract. Therefore, we hold the State may not unilaterally alter its agreement with old TERI program participants by forcing the old TERI participants to contribute to the retirement system.[7]

The State argues that the statutes did not create a binding contract and that this case is "on all fours" with *Alston v. City of Camden*, 322 S.C. 38, 46, 471 S.E.2d 174, 178 (1996). In *Alston*, this Court held that employees generally have no contractual rights in their employment merely by virtue of a city ordinance describing the terms of their employment. *Id.* at 45, 471 S.E.2d at 177. We find that *Alston* is distinguishable in several respects. First, the Court held that the benefits affected in *Alston* were "fringe benefits," and that the employee had a reasonable expectation that those benefits might be subject to change. *Id.* at 48, 471 S.E.2d at 179. In addition, the agreement in *Alston* was the type of unilateral contract that is subject to modification at any time. *Id.* at 48–49, 471 S.E.2d at 179.

Our holding in the present case rests not on general principles of contract law, but rather, on the plain meaning of the language used by the legislature in the old TERI statute. Unlike the city ordinance in *Alston*, Act 153 sought to materially alter terms which formed a substantial part of the basis for the bargain struck between the State and old TERI participants. In these limited circumstances, we read the old

---

7. The State should have treated the retirement contributions by old TERI participants in the same manner in which the State treated the old TERI participants with regard to the grievance system. In Act 153, Section 3, the State exempted old TERI participants from the change in Act 153 related to the grievance procedure for employees. The State should have exempted old TERI participants from all portions of Act 153 related to the new TERI program, instead of applying *new* legislation to *old* TERI participants.

TERI statute to go beyond terms of employment to create a defined employment program. While our rule has been, and continues to be, that statutes do not create contracts that bind the State, the State may not utilize such significant contractual language and disregard its plain meaning and practical effect.

Further, our holding today does not hamper the legislature's ability to govern. The new TERI program will continue in its current form and all participants in the new TERI program, enacted via Act 153, will be subject to the terms of that statute. Further, and contrary to the State's suggestion, our holding will not place the actuarial soundness of the retirement system in ruins. The State's contention that the unfunded accounting liability amortization period will be close to reaching its thirty year limits is based on an assumption that 100 percent of eligible retirees will participate in the old TERI program. This is inaccurate in two respects. First, old TERI participants do not contend that the program cannot be changed with respect to future participants enrolled after July 1, 2005. As a result, the study fails to recognize that under the new TERI program, new TERI participants enrolled after July 1, 2005 will contribute to the retirement system as set forth in Act No. 153. In fact, the study relied upon by the State is based upon an incorrect assumption. This inaccuracy is outlined in the record before this Court in an affidavit relied upon heavily by the State in the claim that the retirement system will reach near crisis. The affidavit of a consulting actuary from Milliman, Inc. stated: "if current and *future* TERI retirees and reemployed retirees do not pay the member contribution . . . ." (emphasis added). The opinion of this Court does not affect the decision of the State to require new or future TERI participants, those enrolled after July 1, 2005, to make retirement contributions.

Second, the contention that the number of old TERI participants is growing at a rapid pace is a complete misrepresentation. The numbers of participants in the old TERI program is diminishing with each passing day and by June 30, 2010, the number of old TERI program participants will be zero. Any new TERI participants (those enrolled after July 1, 2005) are covered by Act 153 and will make contributions to the system as directed by the new requirements of Act 153.

Based on the above, we find that the provision of the old TERI statute created a binding contract and hold that the State breached that contract by applying the requirements of Act 153 to old TERI participants enrolled prior to July 1, 2005.[8]

## B. Working Retirees

■ Petitioners argue that the statutory provisions governing old working retirees created contracts which the State breached by requiring previously enrolled working retirees to contribute to the retirement system. We disagree.

A person eligible for retirement could have elected to become a working retiree. A working retiree is outlined under the former statute as:

[A] retired member of the system who has been retired for at least sixty days may return to employment covered by the system and earn up to fifty thousand dollars a fiscal year without affecting the monthly retirement allowance he is receiving from the system.

S.C.Code Ann. § 9–1–1790(A) (Supp.2004). As an old working retiree, a person would be paid their retirement check. Instead of having the retirement check placed in an escrow account like the old TERI program, the old working retiree received the monthly check and could invest the money as he or she saw fit. An old working retiree was also considered to

---

8. This holding has almost the same effect on the old TERI participants as envisioned under H. 4544, introduced to the House of Representatives in January of 2006. *See* S.C. H. 4544, 116th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 2006) (stating that persons who began participation in the Teacher and Employee Retention Incentive Program (TERI) before July 1, 2005, or who were reemployed retirees who returned to employment of employers covered under the South Carolina Retirement System (SCRS) or the South Carolina Police Officers Retirement System (SCPORS) before July 1, 2005, are exempt from the payment of employee contributions otherwise due SCRS or SCPORS with respect to employment after June 30, 2005. The exemption continues for these employees through the termination of TERI participation and while a reemployed retiree remains employed in the position held before July 1, 2005. SCRS and SCPORS shall refund without interest the employee contributions made by the TERI program participants and reemployed retirees receiving the exemption allowed pursuant to this joint resolution). However, this Court ordered the withheld contributions be placed in an interest bearing account during this litigation.

be retired, and as a result, did not make further contributions to the retirement system. However, in order to retain both his retirement check and normal pay, an old working retiree was limited to earning $50,000 in salary.

As outlined above in this opinion, absent clear statutory language indicating an intent by the legislature to bind itself contractually, a statute does not create a contract. *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985).

In the present case, the old working retiree statute does not use the same contractually significant language as utilized in the old TERI statute. As a result, we hold that the old working retiree statute does not create a binding contract between the State and the old working retirees prohibiting the State from altering the statute exempting old working retirees from further contributions to the retirement system. Stated differently, the old working retiree statute does not evidence an intent by the legislature to be bound to any terms related to the old working retiree program.

However, the record contains evidence indicating that some of the old working retirees may have written contracts detailing the terms of the old working retiree program, including the promise that the old working retirees would not have to make further contributions to the retirement system. These documents, if signed by both parties upon enrollment in the old working retiree program, might reflect what agreement, if any, was made. In addition, some of the old working retirees who do not have signed documents may have relied upon statements made by the State in making a decision to retire and become a working retiree under the prior statute.

As a result, we remand the issue of breach of contract as to the old working retirees to the trial court for a case by case factual determination of whether any actions of the State with regard to individual old working retirees constituted a breach of contract.

## Issues II, III, and IV

Because we find that the old TERI statute created a binding contract, we do not address the remaining issues.

644

Based on the above reasoning, we hold that the State breached its contract with Petitioners who were enrolled as old TERI participants by forcing those old TERI participants to make retirement system contributions. Accordingly, all retirement system contributions withheld from old TERI participants enrolled prior to July 1, 2005 shall be returned with interest to such TERI participants and no further contributions from TERI participants enrolled prior to July 1, 2005 shall be required.

It should be noted that our decision today is a very narrow one which affects only those TERI participants who joined the old TERI program, originally enacted in 2001, prior to July 1, 2005. This Court has previously ordered that all disputed contributions be escrowed in an interest bearing account during this litigation and as a result this money is available to be returned to the TERI participants. Both the State and the old TERI participants were protected by this Court in its order requiring the disputed funds be escrowed in an interest bearing account. Thus, under this Court's previous order, the disputed retirement system contributions have been segregated in a separate account during the course of this litigation, and now the State has the funds readily available to accomplish the refund ordered herein.

The new TERI program as adopted by the legislature in Act 153 continues to be valid and all those participants joining after July 1, 2005 are subject to the entirety of the requirements outlining the new TERI program in Act 153. It is fully within the power of the legislature to make changes to laws that impact future participants, but as outlined in this opinion, the State breached its contract with the old TERI participants by changing the terms of the existing statutory agreement after participants agreed to those terms by electing to retire.

Finally, we remand the issue of breach of contract as related to the old working retirees to the trial court. The record before this Court does not allow us to make the factual or legal inquiry necessary to determine if a binding contract existed between the State and the old working retirees re-

garding the making of further retirement system contributions.

MOORE, BURNETT, JJ., and Acting Justices PERRY M. BUCKNER and D.L. JEFFERSON, concur.

## ORDER

On May 4, 2006, this Court issued an opinion holding that respondents breached their contract with TERI participants who joined the TERI program, originally enacted in 2001, prior to July 1, 2005 (old TERI participants), by forcing them to make retirement system contributions. *Layman v. State of South Carolina*, Op. No. 26146, 630 S.E.2d 265 (S.C.2006). We further ordered that all retirement system contributions withheld from those TERI participants be returned to them with interest and that no further contributions from them shall be required. *Id.* Finally, we remanded the issue of breach of contract as it relates to working retirees to the trial court because the record before us does not allow us to make the factual or legal inquiry necessary to determine if a binding contract existed between the State and the working retirees regarding the making of further retirement system contributions. *Id.*

The parties have now filed several motions. We will address respondents' petition for rehearing first. We deny the petition with regard to Arguments I and II.

We also deny the petition as to Argument III, but will analyze the arguments made therein. Respondents contend this Court impugned the integrity of counsel by labeling as a complete misrepresentation the assertion that the growing number of TERI participants was part of the reason for requiring contributions from previously enrolled TERI participants. At page 26 of their brief respondents state, "Act 153 was adopted in the face of increasing liabilities in the Retirement System." The sentence is accompanied by a reference to pages 754 and 755 of the record. Those pages in the record contain a portion of the Milliman study describing the increase in the number of participants corresponding to the increase in the liabilities of the retirement system. The numbers are reflected in chart form, depicting the liabilities increasing

significantly, almost off the charts. We did not intend to impugn the character of counsel, but we did find fault in the analysis used with respect to the entire Milliman report. Respondent's reliance on the report was inaccurate because by the time respondents prepared the briefs for presentation before this Court, we had previously certified the plaintiff class to include *only* those retirees enrolled *prior* to July 1, 2005. The Milliman report included both current and future TERI participants.

Further, this Court pointed to flawed analysis by stating that 100 percent of eligible retirees were used in arriving at the figures in the report. This sentence, when taken out of context, is incorrect. To clarify, the Milliman report did assume that only 80 percent of *all* eligible retirees (as opposed to 100 percent of eligible retirees) would participate in TERI.[1]

In Arguments IVA and IVB, respondents maintain the Court should amend the class definition to exclude working retirees or, in the alternative, decertify the entire class. Respondents state that class treatment is not necessary because "if the Court lets its decision stand, respondents will comply with the law as declared and provide appropriate relief to all persons entitled to it." Respondents also point out that if the

---

1. Respondents contend in their Introduction, that "[t]his case represents a dramatic departure from ordinary procedural and substantive standards" and that "[i]t is doubtful that there is another case in the history of South Carolina jurisprudence with such a procedural history." Many cases this Court has elected to entertain in its original jurisdiction, which by their very nature involve issues of public interest or special emergency, *see* Rule 229(a), SCACR, have taken the same efficient and expeditious path as the case at hand, and have not included an opportunity for the parties to engage in discovery. *See e.g. South Carolina State Ports Authority v. Jasper County*, 629 S.E.2d 624 (S.C.2006) (order accepting matter in Court's original jurisdiction filed March 2, 2005; opinion issued April 3, 2006); *Sloan v. Wilkins*, 362 S.C. 430, 608 S.E.2d 579 (2005) (order accepting matter in Court's original jurisdiction filed May 14, 2004; opinion issued January 28, 2005); *Sloan v. Sanford*, 357 S.C. 431, 593 S.E.2d 470 (2004) (order accepting matter in Court's original jurisdiction filed May 30, 2003; opinion issued February 9, 2004). The case at hand was certified to this Court by order dated August 4, 2005. The opinion was issued on May 4, 2006, nine months later. Accordingly, this case does not mark a dramatic departure from procedures and time periods in other similar cases before this Court.

class is not decertified, class notice will be required.[2]  We are persuaded by this argument.  Accordingly, we grant respondents' request to decertify the classes in this matter.  Thus, petitioners' Motion for Approval of Notice to Class is denied as moot.

In Argument IVC, respondents maintain the Court failed to prescribe the procedures for making refunds pursuant to the opinion, specifically, how or when such refunds will be made.[3]  Respondents state, "This is one of the reasons that the class definition must be amended to prevent confusion regarding who is entitled to relief, should the Court maintain the same result in this case."  Finally, respondents maintain, as they have in the past, that there is a delay in collecting the contributions and in allocating them to specific persons who are members of the class.

We find there should be no confusion as to who is entitled to relief in this matter—all TERI participants who joined the TERI program, originally enacted in 2001, prior to July 1, 2005, from whom retirement system contributions have been collected since the effective date of Act 153.  As to when such refunds are to be made, we hereby order that all retirement system contributions withheld from the old TERI participants shall be returned to them, with interest at the rate of 6%, within thirty (30) days of the date of this order.  Specifically how this refund will be effectuated is to be decided by respondents, not this Court.  The post judgment interest on the amounts to be returned shall begin to accrue at the rate of 11.25%, set forth by order of this Court dated January 4, 2006,

---

2.  By order dated November 3, 2005, this Court deferred the issue of class notice until after a decision was rendered in the case.

3.  Respondents take issue with this Court's statements in its opinion that the amounts contributed by old TERI participants have been escrowed in a separate interest-bearing account.  By order dated August 31, 2005, this Court granted respondents' request for the escrowed funds to be held within the Retirement Trust Fund, but subject to separate accounting for individual contributions, and also ordered that the escrowed funds bear interest at the current rate established by the State Budget and Control Board pursuant to S.C.Code Ann. § 9–1–280 (1986).  Further, we note that the description of the interest bearing escrow account was borrowed in large part from pages 2–3 of respondents' brief.

for post-judgment interest, if not returned within this thirty (30) day period.

In Argument IVD, respondents maintain the Court must clarify its ruling as to the working retirees and provide for appropriate procedures on remand to deal with whatever claims are permitted. Our opinion orders that the issue of breach of contract as it relates to the working retirees is remanded to the trial court. Because we have now decertified the class, only petitioner Ahrens' case is remanded to the circuit court, specifically, to the Honorable John L. Breeden. Judge Breeden shall have full authority to decide whether to certify a class or deal with the cases individually. Judge Breeden has the authority to fully explore the issue of whether the working retirees entered into a binding contract and all other issues involved in the working retiree action(s).

Finally, respondents assert in Argument IVE that this Court must prescribe procedures for determining petitioners' request for fees and costs. We consider petitioners' Petition for Costs to Include S.C.Code 15–77–300 Attorney's Fees and Motion for Attorney's Fees (Common Fund Doctrine) in conjunction with Argument IVE of respondents' petition for rehearing. We deny petitioners' Motion for Attorney's Fees (Common Fund Doctrine), as we find attorney's fees in this matter should not come from the retirement contributions made by the old TERI participants, or the interest accumulated thereon. However, we remand petitioners' request for costs, to include attorneys' fees pursuant to section 15–77–300, to Judge Breeden to determine if petitioners are entitled to recover reasonable attorneys' fees to be taxed as court costs against the State of South Carolina and the South Carolina Retirement System, and if so, the amount of attorneys' fees they are entitled to based on the actual amount of work performed, expenses incurred, and the benefit obtained for all of the old TERI participants.

IT IS SO ORDERED.

s/ Jean H. Toal, C.J.

s/ James E. Moore, J.

s/ John H. Waller, Jr., J.

s/  Perry M. Buckner, A.J.

s/  Deadra L. Jefferson, A.J.