644 S.E.2d 730

**RWE NUKEM CORPORATION, f/k/a WasteChem Corporation, Respondent,**

v.

**ENSR CORPORATION, Appellant.**

No. 26320.

Supreme Court of South Carolina.

Heard April 5, 2007.

Decided April 30, 2007.

Jeffrey S. Patterson, Karl S. Bowers, Jr., and A. Mattison Bogan, all of Nelson Mullins Riley & Scarborough, L.L.P., of Columbia, for Appellant.

Robert E. Stepp, Amy L.B. Hill, and Roland M. Franklin, Jr., all of Sowell Gray Stepp & Laffitte, L.L.C., of Columbia, for Respondent.

Justice BURNETT.

ENSR Corporation (Appellant) appeals the circuit court's grant of partial summary judgment in favor of RWE NUKEM Corporation, f/k/a WasteChem Corporation (Respondent). We certified the appeal from the Court of Appeals pursuant to Rule 204(b), SCACR, and we reverse and remand.

### *FACTUAL/PROCEDURAL BACKGROUND*

In the early 1990s, Appellant and Respondent were subsidiaries of American NuKEM Corporation (American NuKEM). In 1995, American NuKEM sold its shares in Respondent to

its parent company, RWE NUKEM GmbH.[1] This sale was memorialized in a Stock Purchase Agreement (Stock Agreement), which was signed by representatives of American NuK-EM, RWE NUKEM GmbH, Appellant, and Respondent.

As part of the sale, RWE NUKEM GmbH had the option of requiring American NuKEM to direct Appellant to enter into an agreement with Respondent to continue to provide administrative and management services. Although the Administrative and Management Services Agreement (Administrative Agreement), which was attached to the Stock Agreement, was not separately executed by any party, Appellant continued to perform administrative and management services for Respondent following the sale. Between 1995 and 1999, Respondent paid Appellant approximately $1.4 million for its administrative and management services. In July 1999, the relationship between Respondent and Appellant began phasing out and was completely phased out on or about December 31, 1999.

In September 1999 and in February 2000, Respondent requested that Appellant return all of its documents in Appellant's possession. In March 2000, Appellant notified Respondent that some of the records were missing and some were commingled with Appellant's records. Appellant also indicated it was experiencing difficulty in shipping the records in a timely manner. Also in March, Appellant notified Respondent that certain documents were being gathered and would be produced shortly thereafter, but the commingled documents would be produced on an as needed basis due to the prohibitive time and cost. Respondent repeatedly requested documents from Appellant, and Appellant continually provided Respondent with documents, but Appellant also repeatedly reiterated its position that it would not disaggregate the commingled documents because of the unreasonable cost and time. On January 17, 2003, Respondent again demanded that Appellant produce all of its documents and threatened legal action if the demand was not met by March 31, 2003. On January 28, 2003, Appellant notified Respondent that it would make one final attempt to locate the missing documents, but if

---

1. RWE NUKEM GmbH is a wholly-owned subsidiary of RWE AG, a publicly-traded German corporation.

Respondent was not satisfied by March 31, 2003, Respondent should take whatever action it deemed appropriate.

Respondent filed this action on September 29, 2003, alleging a breach of contract based on Appellant's failure to provide it with all of its records. Appellant answered and asserted Respondent's claim was barred by the statute of limitations, laches, release, waiver, estoppel, and the statute of frauds. On cross-motions for summary judgment, the circuit court denied Appellant's motion for summary judgment. The circuit court also denied in part Respondent's motion for partial summary judgment as to the existence of a contract; a breach, if any, of the alleged contract; and the validity of the defenses of release, estoppel, and waiver. The circuit court granted in part Respondent's motion for partial summary judgment finding the statute of limitations, laches, and the statute of frauds were not valid defenses in this case.

## ISSUES

I. Did the circuit court err in granting partial summary judgment in favor of Respondent based on the statute of limitations?

II. Did the circuit court err in granting partial summary judgment in favor of Respondent based on laches?

## STANDARD OF REVIEW

The circuit court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). In determining whether any triable issues of fact exist, the circuit court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn*, 294 S.C. 383, 385, 365 S.E.2d 24, 25 (1988). "[I]n considering cross motions, the court should draw all inferences against each movant in turn." 73 Am.Jur.2d *Summary Judgment* § 43 (2001). On appeal from an order granting sum-

mary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## *LAW/ANALYSIS*

### I. Statute of Limitations

Appellant argues the circuit court erred in granting Respondent's motion for partial summary judgment as to Appellant's statute of limitations defense. We agree.

The circuit court determined the alleged breach, if any, did not occur until March 2003 when Appellant refused to deliver the remaining records within its possession to Respondent. The circuit court held, in the alternative, Appellant's letter dated January 28, 2003, acted as a waiver to any statute of limitations defense prior to March 2003. The circuit court also found the discovery rule did not apply, but even if it did, Appellant would be estopped from claiming the statute of limitations as a defense because of its numerous attempts to comply with Respondent's requests.

### A. Date of Breach

Both parties agree the applicable statute of limitations in this action is set forth in S.C.Code Ann. § 15-3-530(1) (2005). An action for breach of contract must be brought within three years from the date it accrues. S.C.Code Ann. § 15-3-530(1). Under the discovery rule, a breach of contract action accrues on the date the injured party either discovered the breach or should have discovered the breach through the exercise of reasonable diligence. *State v. McClinton*, 369 S.C. 167, 173, 631 S.E.2d 895, 898 (2006) (breach of contract action generally accrues at the time the contract is breached); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 271, 384 S.E.2d 693, 694 (1989) (discovery rule applies in contract actions), *overruled on other grounds by Atlas Food Sys. Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995); *see also Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct.App. 1998) (applying the discovery rule to a breach of contract action).

Viewing the evidence in the light most favorable to Appellant, on March 24, 2000 and on June 23, 2000, Appellant advised Respondent that it would not produce all of Respondent's documents because some of the documents were commingled with Appellant's documents and disaggregating them would be too costly and time consuming. On August 21, 2000, Respondent issued a "final demand" to Appellant. On September 14, 2000, Appellant notified Respondent that it did not consider the Administrative Agreement to be a binding contract, but Appellant would continue to supply specific documents if Respondent needed them to respond to a third-party's request for information. On February 22, 2002, Appellant notified Respondent that the latest document review should conclude the ongoing matter and Appellant would supply additional documents only upon Respondent's specific request. In response to a letter written by Respondent on January 17, 2003, Appellant agreed on January 28, 2003, to look for the missing documents and Appellant advised Respondent to take whatever action it deemed necessary if Respondent was not satisfied by March 31, 2003. In light of this series of events and Appellant's repeated unwillingness to disaggregate the commingled documents and provide Respondent with a copy of them, there is a genuine issue of material fact as to when Respondent discovered or should have discovered the breach, if any, through the exercise of reasonable diligence.

## B. Waiver

 A party can waive a statute of limitations defense. *McLendon v. S.C. Dep't of Hwys. Pub. Transp.*, 313 S.C. 525, 525–26, 443 S.E.2d 539, 540 (1994). " 'Waiver of [the statute of] limitations may be shown by words or conduct. Thus, waiver may result from express agreement, ... from failure to claim the defense, or by any action or inaction manifestly inconsistent with an intention to insist on the statute.' " *Mende v. Conway Hosp., Inc.*, 304 S.C. 313, 315, 404 S.E.2d 33, 34 (1991) (citing 54 C.J.S. *Limitation of Actions* § 22 (1987)). Waiver is a question of fact for the finder of fact. *Parker v. Parker*, 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994).

Respondent specifically argues Appellant's email dated February 22, 2002, is evidence of Appellant's waiver of the statute

of limitations. On February 22, Appellant notified Respondent it would ship "four boxes of records which represent our final installment of documents." However, Appellant also advised that certain invoices were commingled with its documents and Appellant refused to send those documents to Respondent, except by Respondent's request for specific documents. Viewing this in the light most favorable to Appellant, this email does not indicate Appellant waived the statute of limitations as a matter of law, but rather indicates there is a factual question regarding waiver.

Moreover, the issue is whether Appellant's willingness to continue to locate documents was an action manifestly inconsistent with an intention to insist upon the statute of limitations. Even though Appellant provided Respondent with a steady flow of documents, Appellant continually notified Respondent that it would not provide all of Respondent's documents and it would produce the commingled documents on an as needed basis only. Appellant complied with Respondent's request on a conditional basis until March 2003, and, this conditional response creates a genuine issue of material fact as to whether Appellant waived the statute of limitations.

## C. Estoppel

"[A] defendant may be estopped from claiming the statute of limitations as a defense if the delay that otherwise would give operation to the statute had been induced by the defendant's conduct." *Black v. Lexington Sch. Dist. No. 2*, 327 S.C. 55, 61, 488 S.E.2d 327, 330 (1997) (quotations omitted). The inducement may consist of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary. *Id.* Although the issue of whether a defendant is estopped from claiming the statute of limitations is ordinarily a question of fact to be determined by the judge, summary judgment is appropriate where there is no evidence of conduct on the defendant's part warranting estoppel. *Id.* at 61, 62 n. 1, 488 S.E.2d at 330, 331 n. 1.

Even though Appellant cooperated with Respondent's requests for documents for several years, Appellant also repeatedly objected to disaggregating the commingled docu-

ments due to the unreasonable time and cost involved in the task and advised Respondent that it would produce the commingled documents only upon Respondent's request for specific documents. Due to this conditional cooperation by Appellant, a factual question exists regarding whether Appellant induced the delay it now asserts as a defense to Respondent's claim.

## II. Laches

Appellant argues the circuit court erred in dismissing its laches defense. We agree.

Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights. *Chambers of South Carolina, Inc. v. County Council for Lee County,* 315 S.C. 418, 421, 434 S.E.2d 279, 280 (1993). Laches connotes not only an undue lapse of time, but also negligence and opportunity to have acted sooner. *Id.* at 421, 434 at 281. The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice. *Hallums v. Hallums,* 296 S.C. 195, 199, 371 S.E.2d 525, 528 (1988).

The circuit court denied summary judgment as to whether a contract existed and if so, whether the contract had been breached. Because the date of the breach, if any, is unknown, there are factual questions as to whether there was a delay, whether the delay was unreasonable, and whether the delay, if any, prejudiced Appellant. Even if laches is implicated in this case, summary judgment was improperly granted on Appellant's laches defense given these factual questions.

## *CONCLUSION*

Based on the foregoing analysis, we reverse the circuit court's grant of partial summary judgment and remand for further proceedings consistent with this opinion. We need not address Appellant's remaining issue. *See Hagood v. Sommerville,* 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (appellate

court need not address remaining issues when resolution of prior issue is dispositive).

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.