661 S.E.2d 73

**ANONYMOUS TAXPAYER, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent.**

No. 26473.

Supreme Court of South Carolina.

Heard Jan. 10, 2008.

Decided April 28, 2008.

426

428

A. Camden Lewis, Ariail E. King, of Lewis & Babcock, and John M.S. Hoefer, of Willoughby & Hoefer, all of Columbia, for Appellant.

Ronald W. Urban, of SC Department of Revenue, Vance J. Bettis and Shahin Vafai, both of Gignilliat, Savitz & Bettis, all of Columbia, for Respondent.

Justice BEATTY:

In this revisited challenge to the change in state tax exemptions for retired state employees, Appellant Anonymous Taxpayer appeals the circuit court's decision to affirm the administrative law court's (ALC's) order denying class certification and dismissing his claims. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Prior to 1989, state and local government retirement benefits were exempt from state taxes while only the first $3,000 of federal retirement benefits was exempt. S.C.Code Ann. § 9–1–1680 (1986). In 1989, the United States Supreme Court held the doctrine of intergovernmental immunity and 4 U.S.C. § 111 (1997), prohibited the states from taxing federal government retirees at a greater rate than state and local government retirees. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 818, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The Court informed states they could cure the problem "either by extending the tax exemption to retired federal employees (or to all retired employees), or by eliminating the tax exemption for retired state and local government employees." *Id.* In response to *Davis*, our Legislature sought to standardize state taxation on both federal and state retirees by deleting the full tax exemption to state and local government retirees, increasing state retirement benefits by 7%, and allowing a comprehensive exemption for only the first $3,000 of all government retirement benefits. Act No. 189, Part II, § 39, 1989 S.C. Acts 1436 (Act 189).[1]

---

1. This $3,000 exemption increases to $10,000 in the year the retiree reaches the age of 65. S.C.Code Ann. § 12–6–1170 (2000 & Supp. 2006).

Anonymous Taxpayer (Appellant) retired in 1997 and filed an action on behalf of himself and all other similarly situated state retirees in 1998 against the State, the different State Retirement Systems, the Department of Revenue, and the Budget and Control Board. Appellant alleged breach of contract and challenged the constitutionality of Act 189. The trial court denied the State's motion to dismiss for failure to exhaust the administrative remedies. Finding retirees had no contractual or property right in a tax exemption, the court granted the State's motion to dismiss for failure of the complaint to state a cause of action.

This Court reversed, finding: (1) the trial court should have dismissed the matter without prejudice because the retirees failed to first exhaust their administrative remedies; and (2) the trial court erred in granting a motion to dismiss on the novel issue of whether the retirees had constitutional causes of action for impairment of contract and taking without just compensation. *Evans v. State*, 344 S.C. 60, 67–69, 543 S.E.2d 547, 551 (2001). The Court found pursuing administrative remedies would not deprive retirees of their constitutional right to a jury trial on their breach of contract cause of action. The Court noted that, assuming there was a valid contract between retirees and the Retirement Systems, the Retirement Systems could not be held liable for any alleged breach once Act 189 became effective because performance would have been rendered impossible by the enactment of law, and thus, retirees did not have a valid breach of contract action. *Evans*, 344 S.C. at 67, 543 S.E.2d at 551 ("Since State Retirees do not have a viable breach of contract action, pursuing their action through the administrative process does not violate their right to a jury trial."). The case was remanded to the trial court, dismissed without prejudice, and pursued through administrative channels.[2]

On August 31, 2001, the Department of Revenue issued a final order denying Appellant's request for a refund of the amount of tax paid after the enactment of Act 189. The Department found: Appellant's claims were barred by the statute of limitations; there was no contractual right to the tax exemption; even assuming there was a contract, there was

---

2. At some point after remand, the case title was changed to *"Anonymous Taxpayer v. South Carolina Department of Revenue."*

no substantial impairment of the contract; if there was a substantial impairment, repeal of the tax exemption was reasonable and necessary to carry out the legitimate government purpose; and repeal of the exemption did not amount to a taking. The Department also found that Appellant could not file a claim for a refund on behalf of a class.

Appellant requested a contested case hearing before the Administrative Law Court (ALC) on behalf of himself and all similarly situated state retirees, restating his impairment of contract, taking without just compensation, and denial of due process claims. The ALC issued an order on June 14, 2002, initially granting Appellant partial summary judgment by concluding the retirement code gave rise to a contract between the State and retirees. However, the ALC vacated this order upon reconsideration. The matter was submitted upon stipulations, depositions, and briefs.

On February 20, 2003, the ALC denied Appellant's motion for class certification, finding: (1) there was no language in the Revenue Procedures Act that provided for class actions; (2) the Act required the Department to issue refunds to any other taxpayer who had also applied for refunds once a taxpayer prevails on his claim that a tax was imposed wrongfully; and (3) the Act stated that there was no "other remedy than those provided" in the Act, such that a class action suit would be barred. On April 29, 2004, the ALC issued its final order on the merits, finding: (1) the statute of limitations barred Appellant's claims; (2) the contract cause of action failed on the merits because Appellant could not prove there was a contract, there was a substantial impairment of the contract, or that Act 189 was not reasonable or necessary; and (3) Appellant failed to prove Act 189 constituted a taking of private property without just compensation or that it was a deprivation of property without due process of law. The ALC dismissed Appellant's claims and denied all relief. The circuit court affirmed the ALC's findings on appeal. This appeal followed.

## DISCUSSION

### I. Impairment of Contract

■■■■ Appellant argues the enactment of Act 189 impaired his retirement contract, thus violating the Contract Clause of

the United States Constitution. In discussing the Contract Clause, the Supreme Court said, "Although the Contract Clause appears literally to proscribe 'any' impairment, . . . 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.'" *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 21, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 78 L.Ed. 413 (1934)). "The Contract Clause is not an absolute bar to subsequent modification of a State's own financial obligations. As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose." *United States Trust Co.*, 431 U.S. at 25, 97 S.Ct. 1505. To establish a contract clause violation, Appellant must show To establish a contract clause violation, Appellant must show: (1) the existence of a contract; (2) the law changed actually impaired the contract and the impairment was substantial; and (3) the law was not reasonable and necessary to carry out a legitimate government purpose. *Hodges v. Rainey*, 341 S.C. 79, 93, 533 S.E.2d 578, 585 (2000).

## A. Existence of Contract

The major question in this case is whether the pre-Act 189 tax exemption amounted to a contract. Appellant argues a contract existed based on the contractually-significant language used in the Retirement Code.

 "Generally, statutes do not create contractual rights." *Layman v. State*, 368 S.C. 631, 637, 630 S.E.2d 265, 268 (2006). However, a contract created by statute may be found to exist in this state only where contractual rights are expressly found in the language of the statute. *Id.* at 638, 630 S.E.2d at 268. Specifically, the Court looks for contractually-significant language within the statute in determining whether a contract was intended to be created by the Legislature. *Id.* at 641, 630 S.E.2d at 270. In *Layman*, the contractually-significant language included words to the effect that a "member who is *eligible*," "*complies* with the requirements of this article," and "*shall agree*." *Id.* at 639, 630 S.E.2d at 269.

Former section 9–1–1680 contained the following language:

The right of a person to an annuity or retirement allowance or to the return of contributions, an annuity or retirement allowance itself, any optional benefit or any other right accrued or accruing to any person under the provisions of this chapter, and the moneys of the System created hereunder, are hereby exempted from any State or municipal tax and exempted from levy and sale, garnishment, attachment or any other process whatsoever and shall be unassignable except as herein specifically otherwise provided.

S.C. Code Ann. § 9–1–1680 (1986).

█ In reviewing this statute, the circuit court held there was no contractually-significant language that would evidence the Legislature's intent for the tax exemption to be contractually binding. Appellant argues, however, that language from other sections of the entire Retirement Code renders all the subsections in the Code, including the tax exemption, a contract with state retirees. This argument is unavailing in light of our opinion in *Layman* where the language of the statute sections were evaluated individually for contractually-significant language. *See Layman*, 368 S.C. at 643, 630 S.E.2d at 271 (evaluating separately the TERI statute and the working retirees statute, both found within the Retirement Code, to determine that the former TERI statute amounted to a contract and the former working retiree statute did not). Appellant cannot pick separate language from separate sections within the entire Code to render the prior tax exemption a contract.

Further, despite the fact that section 9–1–1680 is found in the Retirement Code and it deals with issues other than just taxation, the portion of the statute at issue here is a tax law subject to modification.[3] *See Ward v. State*, 356 S.C. 449, 453, 590 S.E.2d 30, 32 (2003) (evaluating whether Act 189 was constitutional in light of the fact that it increased the retirement benefits given to State retirees while taxing federal retirees at the previous level; the Court noted that the General Assembly amended South Carolina's tax statute in enacting Act 189 to comply with *Davis* ); *Rivers v. State*, 327

---

**3.** Appellant further argues that a tax statute may also create a contract. There is no indication in section 9–1–1680 that the Legislature intended it to create a contract.

S.C. 271, 274, 490 S.E.2d 261, 263 (1997) (noting that taxpayers have no vested interest in tax laws remaining unchanged); *Lloyd v. Lloyd,* 295 S.C. 55, 57–58, 367 S.E.2d 153, 155 (1988) (noting that although section 9–1–1680 stated that retirement income could not be garnished, section 20–7–1315 was a more recent and more specific statute and it allowed garnishment of state retirement income to pay a family court support obligation in a proper case; thus, the statute was not irrevocable).

Accordingly, section 9–1–1680 did not create a contract because it did not contain contractually-significant language, it was a tax law, and it was subject to modification. Thus, Appellant has failed to prove the first element of his impairment of contract claim.

## B. Actual and Substantial Impairment of the Contract

■ Even assuming there was a contract, Appellant must prove the second element in an impairment of contract claim regarding whether there was a substantial impairment to the contract. Appellant argues that the ALC and the circuit court erred in finding the 7% retirement benefits increase "fairly offset" the loss of the tax exemption because, assuming retirement benefits of $100 and the 7% increase of $7, he would be taxed on $107 at a rate of 7%, which would be $7.49 in taxes. Thus, he argues, he will always be $0.49 worse off under Act 189 than he would be under prior section 9–1–1680. We find this calculation unpersuasive because it fails to consider the tax exemption given to Appellant as a state employee.[4]

■ A statute is viewed as substantially impairing a contract, for Contract Clause analysis, where it alters the reasonable expectations of the contracting parties. *Hodges,* 341 S.C. at 94, 533 S.E.2d at 585–86. In discussing the impairment of contract claim in *Evans,* this Court noted that testimony "may have revealed Act 189's 7% increase in retirement benefits fairly offset any financial loss to State Retirees resulting from

---

4. Assuming Appellant had an income of $10,000, pre-Act 189, he would not have any state taxes on the income and would net $10,000. After the enactment of Act 189, Appellant would receive a 7% raise in income to $10,700. Applying the same presumed 7% state tax from Appellant's example to the $7,700 in taxable income after the $3,000 exemption, Appellant would be taxed $539. Thus, his post-Act 189 net, after state taxes, would be $10,161.

Act 189's deletion of the full tax exemption for state retirement benefits." *Evans,* 344 S.C. at 68, 543 S.E.2d at 551.

Taking the cue from the *Evans* decision, the ALC accepted a deposition and affidavit from the Department's expert, R. Kent Porth, analyzing the impact of Act 189 on Appellant. Reviewing Appellant's income tax returns from the years 1997 through 2001, Porth opined that the 7% increase in retirement benefits more than offset the increased tax burden resulting from the enactment of Act 189 in nearly every taxable year. Although Appellant disagreed with Porth's calculation method, Porth was the only expert presented below for the ALC's consideration. The ALC found, and the circuit court affirmed the finding, that the 7% retirement benefits increase fairly offset the loss of the tax exemption such that there was no substantial impairment of the contract.

The ALC's finding that there was no substantial impairment of the contract because the loss of the tax exemption was fairly offset by the 7% increase in benefits is supported by the substantial evidence in the record. *See S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control,* 363 S.C. 67, 73, 610 S.E.2d 482, 485 (2005) (noting there is a substantial evidence standard of review from the decision of the ALC). While Appellant's generalized calculation would appear to indicate Act 189 was detrimental, his calculation does not take into consideration the specific deductions and exemptions from Appellant's retirement income like a review of his tax returns would.

## C. Reasonable and Necessary

The final element to an impairment of contract claim is whether the impairment was reasonable and necessary to carry out a legitimate state purpose. Appellant argues that although *Davis* mandated that the states impose state taxes on state and federal retirees equally, it did not mandate that the states remedy the situation by impairing contracts.

Both the ALC and the circuit court found that enacting Act 189 was reasonable and necessary to accomplish the legitimate state purpose of complying with *Davis.* This Court has noted that Act 189 was specifically enacted to follow the dictate of *Davis. Ward,* 356 S.C. at 453, 590 S.E.2d at 32. Complying

with the mandates of *Davis* is a legitimate government purpose and Act 189 reasonably and necessarily accomplished that goal by taxing state and federal retirees equally. Because Act 189 was a reasonable response to *Davis*, it did not amount to an impairment of contract. *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 323 S.C. 532, 547, 476 S.E.2d 481, 489 (1996) (noting that where a legislative enactment is reasonable, the Court defers to the legislature and rejects any impairment of contract claim).

## II. Takings/Due Process Claims

■ Appellant argues the circuit court erred in finding Act 189 did not amount to a taking of property without just compensation or deprive Appellant of due process of law because: (1) Appellant's vested tax exemption benefit arises under a contract, and, like thirty-year, tax-exempt bonds, the State could not change the tax status in violation of the contract; (2) there was evidence that Appellant had expectations that he would receive the tax exemption; and (3) retirement benefits, including the tax exemption, are property rights.

■ Because both a Takings Clause cause of action and substantive due process cause of action focus on a party's ability to protect their property from capricious state action, parties claiming both of these violations must first show that they had a legitimate property interest. The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. *Rick's Amusement, Inc. v. State*, 351 S.C. 352, 357, 570 S.E.2d 155, 157 (2001). In determining whether a governmental action violates the Takings Clause, the courts consider: (1) the economic impact of the state action; (2) its interference with distinct investment-backed expectations; and (3) the character of the state action. *Id.*

■ Substantive due process provides that one may not be deprived of property for arbitrary reasons. *Worsley Co. v. Town of Mount Pleasant*, 339 S.C. 51, 56, 528 S.E.2d 657, 660 (2000) ("Substantive due process protects a person from being deprived of life, liberty or property for arbitrary reasons."). To support a substantive due process violation, a party must

show "he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law." *Id.*

Having found that section 9–1–1680 did not create a contract entitling Appellant to tax exemptions, we conclude that there are no property rights infringed upon by Act 189. Even though taxes amount to taking money from taxpayers or business, those kinds of assessments are not treated as per se takings under the Fifth Amendment. *Rivers,* 327 S.C. at 275, 490 S.E.2d at 263. Moreover, in order for Act 189 to have effected a taking in the present case, Appellant would have to have had a vested right to the tax exemption. Appellant has failed to show he had any reasonable investment-backed expectations in the tax exemption, and there is no contracted obligation. Because there is not a vested interest in tax laws remaining unchanged, Appellant failed to prove a Takings Claim.

There is no cognizable property interest that requires due process. Appellant relies on *Rivers* in support of his due process claim. His reliance is misplaced. *Rivers* involved a due process claim as a result of excessive retroactive application of tax legislation. In the instant case, there is no retroactive application of tax legislation.

### III. Statute of Limitations

In addition to failing to prove he was entitled to the tax exemption, Appellant's case was untimely. Appellant argues the ALC and the circuit court erred in finding his claims were barred by the statute of limitations because: (1) the Department did not pursue that defense in *Evans;* (2) he made his claim for a refund within three years of retirement; and (3) it was a contract providing for continuing performance, thus the limitations period began anew each year.

"Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs." *Moates v. Bobb,* 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996). The statute of limitations for actions pursuant to contract or statute is three years. S.C.Code Ann. § 15–3–530(1), (2) (2005) (stating the statute of limitations for actions based upon contract or upon liability

created by statute is three years). The limitations period begins to run when a party knows or should know, through the exercise of due diligence, that a cause of action might exist. *RWE NUKEM Corp. v. ENSR Corp.*, 373 S.C. 190, 196, 644 S.E.2d 730, 733 (2007) (noting that under the discovery rule, a cause of action for breach of contract accrues on the date the injured party discovered or should have discovered the breach); *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) ("Under the discovery rule, the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct.").

In *Harvey v. South Carolina Department of Corrections*, 338 S.C. 500, 527 S.E.2d 765 (Ct.App.2000), the Court of Appeals reviewed a statute of limitations defense in a 1993 action filed by current or recently retired employees of the Department of Corrections complaining that their retirement benefits were only prospectively transferred from the South Carolina Retirement System to the Police Officers Retirement System. The court noted that the cause of action for the transfer of prior years of service accrued in 1983, when the employees were prospectively transferred to the PORS, because it was "undisputed that Employees knew of their claim at that point." *Harvey*, 338 S.C. at 508, 527 S.E.2d at 769–70.

We find Appellant knew, or through the exercise of due diligence should have known, that his retirement benefits would no longer be exempt from state income tax when the statute was changed in 1989. Although Appellant did not begin receiving retirement income until 1997, he had a vested interest in his retirement plan prior to Act 189. Similar to Harvey, Appellant's action accrued at the time of the 1989 change, not when he later retired and attempted to claim the prior tax exemption.[5] Thus, the limitations period expired in

---

5. Appellant argues that he could not have applied for a tax refund before he retired, and thus, his application for a refund in 1998 was within the three-year statute of limitations for seeking a refund. This argument is unpersuasive. The basis of Appellant's claim is an alleged statutorily-created contract. Assuming that a contract existed, it was breached when the state changed the law eliminating the tax exemp-

1992, not in 1998 when Appellant filed his action. This action is barred by the statute of limitations.

 Appellant further argues that the Department waived the statute of limitations defense when it did not raise it as an additional sustaining ground in *Evans*. A party can waive a statute of limitations defense, but the waiver must be shown by words or conduct, including an express agreement, failure to claim the defense, or any action or inaction inconsistent with an intention to use the statute of limitations defense. *RWE NUKEM*, 373 S.C. at 197, 644 S.E.2d at 734. According to the Appellant's brief, the Department asserted the statute of limitations in the early stages of the *Evans* case. The Department did not assert the statute of limitations as an alternative sustaining ground in *Evans*, and it argued that the circuit court erred by not ordering that administrative remedies should have been exhausted.

While the Department did not raise the statute of limitations defense on appeal in *Evans* court, the result of the *Evans* decision was that the case was remanded to the circuit court for dismissal without prejudice so that Appellant could exhaust his administrative remedies. The dismissal of the complaint in *Evans* allows the Department could then assert any available defenses, including a statute of limitations defense, when the action is re-filed.

 Finally, Appellant argues the failure to impose the pre-Act 189 tax exemption to his retirement benefits each year amounts to a continuing breach such that a new limitations period begins each year. The circuit court gave two reasons for denying this argument: (1) because Appellant was alleging an impairment of contract action, not a breach of contract action, the statute of limitations began to run when any alleged contract was impaired by Act 189, not when Appellant was actually denied the exemption each year; and (2) the cause of action accrued when Act 189 was passed because at that point Appellant was put on notice that he had a cause of

tion. Thus, accrual date is the time of the change in the law, not nearly ten years later when Appellant sought a refund pursuant to the old law.

action. We agree with the circuit court that there is no continuing breach which would start a new limitations period because the cause of action arose with the enactment of Act 189.

## CONCLUSION[6]

Appellant failed to prove his impairment of contract claim because section 9–1–1680 did not contain contractually-significant language, it was a tax law, and it was subject to modification. Appellant's takings and due process claims are further without merit because Appellant cannot show that he had a legitimate property interest in the tax law remaining unchanged. Moreover, the substantial evidence showed that any loss of alleged property was more than made up for with the 7% retirement benefits increase. Finally, Appellant's claims are barred by the statute of limitations because he knew or should have known at the time Act 189 was passed that the Act would affect his retirement benefits.

Accordingly, the circuit court's order is

**AFFIRMED.**

MOORE, Acting Chief Justice, WALLER, J., and Acting Justices JAMES W. JOHNSON, JR. and EDWARD B. COTTINGHAM, concur.

---

**6.** Appellant also complains about the ALC's denial of class certification. However, Appellant only appeals one of the two reasons the circuit court listed for affirming the ALC. Therefore, the circuit court's alternate sustaining ground is the law of the case. *Anderson v. Short,* 323 S.C. 522, 525, 476 S.E.2d 475, 477 (1996) (holding that where the ruling of the trial judge is based on more than one ground, the appellate court will affirm unless appellant appeals all the grounds).