13450

BAKER v. STATE HIGHWAY DEPT.

(165 S. E., 197)

*Messrs. J. M. Daniel, Attorney General, Cordie Page, Assistant Attorney General, J. Ivey Humphrey, Assistant Attorney General* and *L. M. Cantrell,* for appellant,

*Messrs. D. Gordon Baker, G. Badger Baker* and *S. J. Royall,* for respondent.

July 15, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Plaintiff brought his action in the Civil Court of Florence County, asking that the State Highway Department of South Carolina, its officers, agents, servants and employees be enjoined and restrained from interfering with, or molesting the plaintiff, his servants, agents and members of his family in the operation of his automobiles without displaying thereon the 1932 license plates.

The complaint alleges that plaintiff applied to the State Highway Department, on forms furnished by it, for licenses for his two automobiles; that he accompanied his applications with cashier's checks in the proper amounts; that defendant received the applications and cashier's checks and issued licenses to plaintiff, but before the licenses were mailed to plaintiff, the Peoples State Bank of South Carolina closed its doors; the Florence branch of this bank issued the cashier's checks which went with the application. When the bank closed its doors, defendant refused to deliver the license

plates to plaintiff and returned to him the cashier's checks; that defendant has prepared for plaintiff's signature another application for licenses, and demands payment with either post office or express money order, although the new form, like the first one used, states that remittances may be made by cashier's check, or personal certified checks.

Upon this complaint the Judge of the Civil Court of Florence issued his order by which the defendant, its officers, agents, servants and employees were enjoined and restrained from interferring with the plaintiff, D. Gordon Baker, his servants, agents, employees, members of his family and any other person in the operation of his automobiles.

The defendant demurred to the complaint because that:

1. The Court is without jurisdiction to entertain the suit against defendant, which is a department of the State Government, and there is no statute authorizing an action of this kind against the defendant.

2. That the action is one to restrain a criminal proceeding and the Court is without jurisdiction to enjoin such proceeding.

3. To the same purport as 2.

4. That the checks given by plaintiff were never cashed, are now in plaintiff's hands and are being used by him for his own purposes and defendant has never realized any proceeds from them, nor has it received from plaintiff any money in payment for said licenses.

5. That the checks tendered in payment for the licenses were not a legal tender, nor payment under the statute, and defendant has no authority to accept anything in payment for such licenses other than lawful money of the United States.

6. That plaintiff has an adequate remedy at law and is not entitled to injunctive relief.

Defendant also gave notice of a motion to vacate the order of injunction.

The matter was heard by Hon. R. W. Sharkey, Judge of the Civil Court of Florence, the 29th day of January, 1932.

On the 9th day of February he filed his order overruling the demurrer and refusing the motion to vacate the order of injunction theretofore granted by him.

From this order defendant appeals upon exceptions which embody, substantially, the questions made by the demurrer. The issues on appeal are presented in defendant's brief in this way:

1. Did the Court have jurisdiction to entertain the action?

2. Did the Court have authority to enjoin the defendant from arresting and prosecuting plaintiff for operating his automobiles under a 1931 license?

3. Did the cashier's checks tendered by plaintiff, upon which no money was realized by defendant, constitute payment for automobile license fees?

4. To the same effect as 3.

5. Has plaintiff such adequate remedy at law as precludes him from asking injunctive relief?

That the suit is, in effect, one against the State is not contested. That issue is definitely settled by the cases of *Casualty Co. v. State Highway Dept.*, 155 S. C., 77; *Fann v. Highway Dept.*, 155 S. C., 219; and many other cases.

Nor is it denied that the State Highway Department, being an integral part of the sovereign—the State—cannot be sued except with the consent of the State. No effort is made by the learned Judge of the Civil Court in his decree to point to any statute which authorizes a suit of this nature against the State Highway Department. No such statute exists.

The order appealed from declares:

"This action is not based upon a legislative enactment, but is brought under a provision of the Constitution of South Carolina, to wit: Art. 1, Sec. 17. 'Private property shall not be taken for private use without the consent of the owner, nor for public use without making just compensation therefor.' "

We think this provision of the Constitution has no application to this case. No one is endeavoring to take plaintiff's property for private use, without his consent, nor is anyone

seeking to take it for public use without making just compensation therefor. Indeed, no one is seeking to take it at all, for any use, private or public. The State is only seeking to require the plaintiff to pay a license fee for the operation of his automobiles on the highways which it has built at great cost, and which it must maintain in safe condition for use at the peril of being mulcted in damages if it fail to do so and one is injured by its failure. It would be just as logical to hold that one who fails to pay the property taxes assessed against him by the State may invoke this same provision of the Constitution when his property is about to be sold for the collection of the taxes.

The order appealed from holds that that provision of the Constitution is self executing, and does not need the aid of statutory enactment to sustain an action and cites the case of *Chick Springs Water Co. v. Highway Department,* 159 S. C., 481, and other authorities in support of the proposition. There is no question of its correctness made here, but it is denied that the facts of this case bring it within the purview of the constitutional provision which is invoked to sustain it.

What constitutes such a "taking" as will bring an action within the protecting scope of the section of the Constitution here under consideration?

The question was considered in the case of *Taylor v. Lexington Water Power Co.,* decided by this Court March 8, 1932, 165 S. C., 120, 163 S. E., 137. The opinion in that case cited with approval the opinion of Mr. Justice Stabler in the case of *White v. So. R. R. Co.,* 142 S. C., 284; 140 S. E., 560-4; 57 A. L. R., 634, which holds that:

"The word 'taking' in the constitutional provision cited is not limited in its meaning and application to cases in which there is an actual physical seizure and holding of property, but is broad enough to include cases in which the access to abutting premises is obstructed by the change of grade of a highway, or there is such physical injury to property as results in destruction, or substantial impairment of its usefulness." Citing 20 C. J., and cases there cited.

"Any regulation which deprives any person of the profitable use of his property constitutes a taking of property which entitles him to compensation, unless the invasion of right is so slight as to permit the regulation to be justified under the police power." *Piper v. Ekern*, 180 Wis., 586; 34 A. L. R., 32.

There has been no taking of plaintiff's property nor deprivation of its use by any State regulation. He may have the unrestrained use of it whenever he complies with the statute law of the State which requires him to pay a fee and obtain a license for the privilege. This requirement of the law, while primarily one for revenue, is also one of police regulation, as an inspection of the statutes discloses. ·

It is clear that this action may not be maintained under the provisions of Art. 1, Sec. 17 of the Constitution. It is conceded by the order appealed from that there is no statutory provision under which it may be maintained. It follows, necessarily, that the Court was without jurisdiction to entertain it.

This conclusion practically disposes of the appeal, and we might well limit the opinion to it; but there are other questions of serious importance to the administration of the State's interests in connection with the State Highway Department, made by the appeal, which should be disposed of.

In reference to the issue that the Court had no power by its authorities, to restrain defendant from proceeding against plaintiff, criminally for operating his automobiles without a 1932 license plate, such operating being a criminal offense under Section 5909, Code of Laws 1932, we deem it necessary to say, only, the contention of appellant is sustained by the opinion of this Court in the case of *Palmetto Golf Club v. Robinson, Sheriff et al.*, 143 S. C., 347.

Plaintiff predicates his action in part, upon the contention that the defendant having accepted the cashier's checks which he sent with his application, he has paid for his licenses and is entitled to have them, and cannot be prosecuted for operating his automobiles without them.

"In the absence of any agreement to the contrary money is the sole medium of payment." *Brown v. Huskamp,* 141 S. C., 124.

"With the exception of a few jurisdictions the authorities are unanimous in support of the rule that the giving of a bank check by a debtor for the payment of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt *the presumption being that the check is accepted on condition that it be paid."* (Italics added.) 21 R. C. L., 60, citing authorities from many other jurisdictions.

"And the debt is not discharged until the check is paid—or the check is accepted at the bank at which it is made payable. *This has often been held to be true even where the person entitled to receive the money expresses a preference for its payment by check."* (Italics added.) 21 R. C. L., 61.

In the case of *Koones v. District of Columbia,* 54 Amer. Reps., 278, the Court said:

"What is the effect of a payment by check ordinarily? It is but in itself a conditional payment to be ripened into payment provided the check be honored by the bank."

In *Fleig v. Sleet,* 42 Ohio State, 51; 54 Amer. Rep., 800, it is held; quoting syllabus:

"A check of a third person, given and accepted in payment of a demand, and by the parties supposed to be good, but proving worthless, is not payment."

A footnote to that case as reported in 54 Amer. Rep., has this:

"To the same effect *Weaver v. Nixon,* 60 Ga., 699."

The opinion in the main case says:

"The views we have above expressed are supported by several decided cases from which we cite *Weddigen v. Boston Electric Fabric Co.,* 100 Mass., 422."

In the case of *Eggleston v. Plowman,* a South Dakota case, reported in 44 A. L. R., p. 1231, the Supreme Court of that State said, quoting with approval from the case of *Koones v. District of Columbia, supra:*

"I have not seen a case anywhere reported in which it was held that payment by a check which was afterwards dishonored could be considered a payment in any sense of the law, unless the party who received it had been specifically authorized to receive it, or by the course of trade was to be presumed to have been authorized to receive it, and thus to assume for the creditor the additional burden of the want of diligence in the presentation of the check."

"But it is utterly inadmissible in the case of public officers to add to the trouble and burdens of the public for the purpose of saving an individual who has paid by check exclusively for the gratification of his own private convenience. Having done it for his own convenience he must take the consequences of having made the collector of taxes his own agent, and not say that in that respect he was the agent of the public."

It is needless to cite other authorities. It is patent that the cashier's checks upon the Peoples State Bank of South Carolina, and the acceptance of which the respondent relies upon, did not produce payment. The Highway Department has not received the price of the licenses to which respondent thinks he is entitled. These checks are in the possession of the respondent, and have been deposited by him, in this very case, with the Clerk of the Court, as a bond, as security to indemnify defendant if the injunction granted by the Civil Court be dissolved. In other words respondent virtually says : "these checks are the property of appellant; I sent them and appellant accepted them." Nevertheless, respondent uses them, and recognizes them as his property by using them as a bond in the manner above recited.

The issue is made by the 4th question suggested by appellant's brief that the State Highway Commission had no authority to receive anything but money in payment of the annual license fees required by the statute laws of the State.

We think the point is well made. The authorities are clear to the effect that a public officer, charged by law with the

collection of taxes, fees due the State, fines and the like things, has no authority to accept anything but money. Therefore no agreement by the Highway Department to accept cashier's checks and personal certified checks could bind the State. No attempt to show that the officers and agents of that department had been granted any such power, is made. If they attempt to exercise such power their efforts are futile, if they do not produce money.

"But power to receive money for convict hire does not imply power to bind the State by the officer's endorsement and negotiation of notes taken therefor. No express authority to so pledge the credit of the State is alleged or shown * * *." *Bank v. State,* 60 S. C., 473.

"A public officer derives his authority from statutory enactment, and all persons are held to have notice of the extent of his powers; and, therefore, as to matters not really in the scope of his authority they deal with the officer at their peril."

*Bank v. State, supra,* citing Bond Debt Cases, 12 S. C., 200; 19 Am. & En. Enc. Law and cases there cited in note on page 907.

In the case of *Eggleston v. Plowman, supra,* it appears that Eggleston transmitted to Plowman, as County Treasurer, a draft in payment of his taxes. He had the money in the bank upon which the draft was drawn to meet it when it was drawn and when the bank closed its doors. The draft was never presented and of course was never paid. At the suit of Eggleston the Circuit Court granted a peremptory writ of mandamus requiring the County Treasurer to issue and deliver to him his tax receipts. On appeal the Supreme Court of South Dakota vacated the writ of mandamus. The Court said:

"A County Treasurer has no authority to accept anything other than money in the payment of taxes, excepting in such instances, not here material, as the statutes expressly otherwise provides, and in the instant case the treasurer had no right to accept the draft as payment of the tax, and did not

in fact undertake or agree to accept the draft. It is the usual rule, in the absence of an express agreement otherwise, that payment by draft or check is conditional payment only, ripening into absolute payment when the draft or check is in fact paid."

Again from the same case:

"We are of the opinion that the rule applicable between private individuals cannot govern as between an individual whose duty it is under the law to pay his taxes and to pay them in money, and a public officer whose duty it is to collect the taxes and to collect them in money."

The same opinion quotes the following from a Massachusetts case:

"We are of opinion that statutes contemplate that the taxes, should be paid to the collector of taxes in money; that if the collector for the convenience of the taxpayers, or himself, receives checks in the absence of any agreement to the contrary they are to be taken as conditional payment, and that if they are not paid the claim for taxes is not satisfied, but that the taxes can still be collected according to law." *Houghton v. Boston,* 159 Mass., 138.

The opinion in the Eggleston case quotes from the case of *Barnard v. Mercer,* 54 Kansas, 630, the following:

"The general rule is that taxes can only be paid in money, unless the law specifically authorizes the treasurer to receive something else." *Judd v. Driver,* 1 Kansas, 455. 'A check or draft given to a collector for the payment of taxes does not discharge the tax unless the check or draft is in fact paid.' Black Tax Titles Sect. 825; 2 Desty. Taxes 693. 'Under the authorities the actual acceptance by the treasurer of a draft in payment of the taxes would not bind the public if the draft afterwards proved to be worthless. The reason is that the treasurer is absolutely without power to discharge the rights of the public to the payment of the tax for anything else than money, or such warrants or public securities as the law specifically authorizes him to receive." *Ibid.*

"A collector of taxes has no authority to receive in payment thereof anything but lawful money of the United States, and may refuse to accept a bank check or draft in payment of such taxes." *Richards v. Hatfield*, 40 Neb., 849; 44 A. L. R., 1235.

But, respondent argues that appellant invited it to send cashier's check in payment of the license fees, and hence it is estopped now to deny that it had authority to accept such checks. If this were a controversy between individuals, respondents contention would be meritorious; but this is an action against the State, and the contention is expressly decided against respondent by the case of *Carolina National Bank v. State of South Carolina*, 60 S. C., 465. An action brought by express legislative authority. It is there held:

"The doctrine of equitable estoppel has no application to a sovereign State. Equitable estoppel rests upon an implication of fraud in the party sought to be estopped, and fraud ought not to be imputed to the sovereign. The State can only act under its constitution and through its legislative enactments pursuant thereto, and can only ratify in the manner in which it could authorize; and if it could be estopped to assert the truth the effect might be to fix upon the State responsibilities in conflict with its constitution and laws. All men are bound to take notice of the special authority of the State's officers and when dealing with them outside their authority, they assume the peril with their eyes open, and cannot be heard to say that they placed reliance upon the State. The question is not one of intention, but one of power; and if the officer has not power to act, his action is not State action, and so affords no basis upon which to predicate estoppel against the State. And if it were in any case a question of intention, the State's intention can only be evidenced in a constitutional way. On the question whether equitable estoppel applies to a State respondent cites from a note to *Williamson v. James*, 4 A. & E. Decs. in Equity, 367 to this effect: 'The principles of estoppel also extends

as far as they are applicable to a State. *State v. Taylor,* 28 La. An., 460. *State v. Ober,* 34 La. An., 359; *State v. Flint, etc., R. R. Co.,* 89 Mich., 481, and to the United States— *United States v. Scott,* 38 Fed. Rep., 393.' But further on in the same note it is stated that: 'Nothing short of legislative enactment will estop a State from claiming the title to property, *Alexander v. State,* 56 Ga., 478'  *  *  *. On this point the Attorney General cites Bishop on Contracts, 390, where it is said: "Ordinarily and by most opinions an estoppel does not take effect against a sovereign State or the United States.' Throop on Public Officers, page 552, where it is said: 'The government is never estopped on the ground that its agent is acting under apparent authority, which is not real.' Citing numerous cases from other Courts. We need only cite this further one:

"In the case of *Filor v. United States,* 9 Wall, 45, the Supreme Court of the United States held that the unauthorized acts of officers cannot estop the government from insisting upon their invalidity, however beneficial they have proved to the United States."

"It is true that the doctrine of estoppel *in pais* does not apply to a sovereign State and that the State can only act under its constitution and through its legislative enactments, and that, therefore, contracts cannot be created against the State except under such sanctions." *Ehrlich v. Jennings,* 78 S. C., 276.

This principle is recognized by this Court in the case of *Luther v. Wheeler,* 73 S. C., 95.

*In re Shambaugh, County Treasurer, v. Bank,* a Nebraska case, reported in 65 A. L. R., 604, it was held that:

"Where an officer's duties are prescribed by statute, usage will not excuse their discharge in a different manner; so proof of custom is not permissible to enlarge the powers of an officer where authority is defined by statute, for a custom or usage repugnant to the commands of a statute will not prevail against the same."

In *Pierce v. United States,* 7 Wall (U. S.), 666; L. Ed., 169, it was held:

"That where no statute or other law gave any department of the government, or its officers or agents, authority to accept bills of exchange, the act of the Secretary of War in accepting bill of exchange drawn for the payment of army supplies could not be upheld by evidence of a practice among heads of departments to accept drafts or bills of exchange for the transmission of funds to disbursing officers."

In the case of *Bolton et al. v. Wharton et al., Mayor,* 163 S. C., 242; 161 S. E., 454, Mr. Chief Justice Blease for the Court said:

"But if the municipality has no statutory power to issue the bonds under any possible situation of facts, it cannot be estopped by any recitals in them from setting up its lack of power."

Citing *Northern Bank v. Porter Township,* 110 U. S., 608; *Merrill v. Monticello,* 138 U. S., 673, 11 S. Ct., 441, 34 L. Ed., 1069.

In the case of *South Carolina National Bank v. Union County,* 162 S. C., 359, Mr. Justice Stabler, delivering the leading opinion of the Court, said:

"From what we have said it is clear, that, if the supervisor did not have authority to execute the notes the county was not estopped by the recitals in the notes that the loan was authorized by the delegation on December 12, 1927, it being undisputed that no such authorization was given, even if the delegation under the law could have given it."

In *Bangor v. Bay City Etc. Co.,* 147 Mich., 7 A. L. R., 1251, the Court said:

"If private persons can create easements by estoppel, under our Statute of Frauds and our decisions, or if a license may be implied from the acquiescence of a private person who stands by and sees, without protest, his land used for a railway, the same cannot be said of township officers, who have no authority except such as the statute gives    *    *    *."

In the case of *Volker v. McDonald, Sheriff,* a Nebraska case, reported in 72 A. L. R., 1267, it is said:

*"Public policy, to prevent loss to the State through the negligence of public officers, forbids the application of the doctrine of estoppel to the State growing out of the conduct and representations of its officers."* (Italics added.)

The opinion quotes *People v. Brown,* 67 Ill., 435, and cited by title other cases.

"A county cannot ratify, or estop itself from contesting the validity of a contract which it had no power under any circumstances to make."

*Scott v. Threshing Co.,* 288 Fed., 739; an Arkansas case reported in 36 A. L. R., 937.

It is patent from the authorities cited that the Highway Department had no power to accept cashier's checks in payment of license fees, notwithstanding its notice that such checks would be accepted. Hence the Highway Department —a part of the sovereignty of the State—is not estopped to contest this present action.

In the light of the opinions hereinabove expressed, the question whether respondent is estopped to maintain this equitable action for injunctive relief because he has an adequate remedy at law, becomes immaterial.

We may say, however, that if plaintiff were right in his contention that the acceptance by the defendant of the cashier's checks effected payment of the license fees, his proceeding would have been by mandamus to compel defendant to deliver to him the license plates.

It is the judgment of this Court:

That the order of injunction appealed from is reversed. That the order of injunction is vacated—and the complaint is dismissed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter and Mr. Acting Associate Justice W. C. Cothran concur.