709 S.E.2d 54

Nancy S. AHRENS, Ann Mercer, and Gary M. McCombs, on behalf of themselves and all others similarly situated, Respondents/Appellants,

v.

The STATE of South Carolina and the South Carolina Retirement System, Appellants/Respondents.

and

James B. Arnold, Jr., Cynthia A. Thompkins–Hart, Nelson E. Brown, William M. Tisdale, Jr., Bobby Pack, Mitch Anderson, Lorenza Cobb, Ivan Holden, Phillip White, Jamie Harrelson, Dan Furr, Ann U. Mercer, Sharon C. Fulton, Johnnie R. Deas, Katie Daniels and Barbara Durfey, Panda J. Duncan, Janet Klee, John Locklair, Carol Ann Williamson and Leon Bellamy, Individually and as Class Representatives, Respondents/Appellants,

v.

The South Carolina Police Officers Retirement System, The South Carolina Retirement System, and the State of South Carolina, Appellants/Respondents.

No. 26966.

Supreme Court of South Carolina.

Heard Nov. 3, 2010.
Decided May 2, 2011.
Rehearing Denied May 26, 2011.

Robert E. Stepp, Roland M. Franklin, Jr., Amy L.B. Hill, and Tina Cundari, all of Sowell, Gray, Stepp & Laffitte, of Columbia, David K. Avant and Justin R. Werner, both of Columbia; for Appellants–Respondents.

A. Camden Lewis, Keith M. Babcock and Ariail E. King, all of Lewis & Babcock, of Columbia; Brana J. Williams, of Conway; Gene McCain Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach and Richard A. Harpootlian, of Columbia, for Respondents–Appellants.

Chief Justice TOAL.

In 2006, this Court decided *Layman v. State*, 368 S.C. 631, 630 S.E.2d 265 (2006), remanding to the circuit court the issue of whether a contract existed between the South Carolina Retirement System (SCRS) and certain retirees.[1] This case is an appeal from the circuit court's decision on remand. In this case, the South Carolina Police Officers Retirement System (PORS), the SCRS, and the State of South Carolina (collectively, the State) appeal the circuit court's order that the State is estopped from collecting retirement contributions from the certified class of "old working retirees" (Retirees), and that the State must return the contributions withheld from those Retirees since July 1, 2005. The State additionally appeals

---

1. Nancy Ahrens, Ann Mercer, and Gary McCombs, on behalf of themselves and all others similarly situated.

the circuit judge's certification of the class of Retirees. Finally, the State argues that Retirees failed to exhaust administrative remedies. The Retirees appeal the circuit court's holding that no contract existed between the State and the Retirees to prevent the State from changing the terms of sections 9–1–1790(A) and 9–11–90(4)(a) of the South Carolina Code (the Working Retirees statutes) after the employees' retirement. Retirees additionally appeal the circuit court's grant of summary judgment on the constitutional issues raised. This Court consolidated for review the cases brought against the PORS[2] and the SCRS[3] (together, the Retirement Systems), and is reviewing the circuit court order pursuant to Rule 204(b), SCACR.

## FACTS/PROCEDURAL BACKGROUND

This case involves the State's working retiree program, and the propriety of its withholding retirement contributions from eligible Retirement Systems members who returned to covered employment with the State prior to July 1, 2005. Prior to this date, the old working retiree program allowed employees to retire and then, after a 60 day break for SCRS members, and a 15 day break for PORS members, those employees could be re-hired at an employer's discretion and receive both retirement benefits and a salary up to $50,000 per year, without being required to contribute to the Retirement Systems. S.C.Code Ann. §§ 9–1–1790(A) (Supp.2001) & 9–11–90(4)(a) (Supp.2002). In 2005, the State Retirement System Preservation and Investment Reform Act (Act 153) amended these statutes to require that retired members pay the employee contribution as if they were active members, but without accruing additional service credit. 2005 S.C. Acts 153. In filing these actions, the Retirees' chief contention is that it is unlawful for the State to change the terms of the old working retiree program after the Retirees irreversibly retired, and with the understanding that contributions to the Retirement Systems would not be required.

---

2. *Arnold v. S.C. Police Officers Ret. Sys.*, No. 05–CP–22–756 (Ct. Comm. Pl., filed June 25, 2009).

3. *Ahrens v. State of S.C. & S.C. Retirement Sys.*, No. 05–CP–40–2785 (Ct. Comm. Pl., filed June 25, 2009).

This Court first considered the issue in *Layman v. State*, 368 S.C. 631, 630 S.E.2d 265 (2006). In that case, participants in the Teacher and Employee Retention Incentive Program (TERI), along with the *Ahrens* plaintiffs,[4] brought an action contesting the contribution requirement created by Act 153. As to the TERI program, this Court ruled in favor of the plaintiffs, finding that "the language in the old TERI statute demonstrates, in unambiguous terms, the intent of the legislature to bind itself to the terms in the statute," and therefore, "[w]hen the State, through Act 153, sought to collect retirement contributions from the old TERI participants, it was in clear breach of the contract it created by the relevant statutes." *Id.* at 639–40, 630 S.E.2d at 269. As to the old working retirees statute, this Court found the statute

> does not use the same contractually significant language as utilized in the old TERI statute. As a result, we hold that the old working retiree statute does not create a binding contract between the State and the old working retirees prohibiting the State from altering the statute exempting old working retirees from further contributions to the retirement system.

*Id.* at 643, 630 S.E.2d at 272.

Still, the Court found evidence in the record that some working retirees may have had written contracts detailing the terms of the program, while others who did not have signed documents may have relied on statements made by the State when deciding whether to retire and enter the working retiree program. *Id.* Therefore, this Court remanded that issue to the circuit court for a "case by case factual determination of whether any actions of the State with regard to individual old working retirees constituted a breach of contract." *Id.* at 643, 630 S.E.2d at 272–73.

On remand, the circuit court considered whether Election of Non–Membership forms signed by employees electing to enter the working retiree program created a contract between the State and Retirees. The circuit court found they did not. However, the court provided the Retirees equitable relief, ruling the State is estopped from changing the terms of the

---

4. The *Arnold* plaintiffs initiated a separate lawsuit challenging the contribution requirement.

working retirees program for those employees who retired prior to July 1, 2005, and further ordering the State to return funds previously withheld.[5] The circuit court also ordered that notice be given to the certified class of *Ahrens* and *Arnold* plaintiffs that a judgment has been made in favor of the class.[6] This appeal follows.

## ISSUES

I. Did the circuit court err in holding that no contract exists between the Retirees and the State?

II. Did the circuit court err in ruling that the State is estopped from requiring Retirees to contribute to the Retirement Systems?

III. Did the circuit court err in certifying the class of Retirees?

IV. Did the circuit court err in granting summary judgment in favor of the State on the Retirees' causes of action for unconstitutional taking, violation of due process, impairment of contract, and quantum meruit?

V. Did the circuit court err in denying the State's motion to dismiss based on the State's claim that Retirees failed to exhaust their administrative remedies under the Claims Procedure Act before bringing the dispute to the circuit court?

## STANDARD OF REVIEW

An action seeking damages for breach of contract is an action at law. *Eldeco, Inc. v. Charleston County Sch. Dist.*,

---

**5.** Having found for the plaintiffs with an estoppel order, the circuit court declined to reach the additional issues raised. Both the *Ahrens* and *Arnold* plaintiffs argued that the State's action in withholding retirement contributions was: (1) an unlawful taking, (2) impairment of contract, and (3) a violation of due process. In raising these issues, both sets of plaintiffs requested injunctive relief. The *Arnold* plaintiffs additionally argued quantum meruit.

**6.** By order dated Nov. 17, 2008, Judge Williams certified the *Ahrens* class as the following: "[a]ll persons currently employed by the State of South Carolina or its agencies or political subdivisions who retired and returned to work prior to July 1, 2005 ("Working Retirees"). Excluded from the classes are persons who are participants in the TERI program." In an order dated Nov. 11, 2008, Judge Williams certified the *Arnold* class with a similar class definition.

372 S.C. 470, 476, 642 S.E.2d 726, 729 (2007). However, the doctrine of estoppel is equitable in nature. *Knight v. Stroud*, 212 S.C. 39, 42–43, 46 S.E.2d 169, 170 (1948). When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal. *Corley v. Ott*, 326 S.C. 89, 92, 485 S.E.2d 97, 99 (1997). In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Inlet Harbour v. S.C. Dep't of Parks, Rec. & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). However, the appellant is not relieved of its burden of convincing the appellate court the circuit judge committed error in his findings. *Pinckney v. Warren*, 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001). When an appellate court chooses to find facts in accordance with its own view of the evidence, the court must state distinctly its findings of fact and the reason for its decision. *Dearybury v. Dearybury*, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002). In an action at law tried by a judge, an appellate court's scope of review extends merely to the correction of errors of law. *Temple v. Tec–Fab, Inc.*, 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009).

## ANALYSIS

### I. Whether a Contract Exists Between the State and Retirees

Retirees argue that where the statute did not create a contract, the Retirement Systems had the authority to "fill up the details" by requiring Retirees sign forms stating they would not be required to pay into the Retirement Systems, and in doing so, these forms created a contract between the State and Retirees, which was then breached when the State began requiring these contributions. We disagree.

This Court has often described a state agency's rulemaking power as its authority to "fill up the details" of the laws promulgated by the General Assembly. *Heyward v. S.C. Tax Comm'n*, 240 S.C. 347, 355, 126 S.E.2d 15, 19–20 (1962); *S.C. Hwy. Dept. v. Harbin*, 226 S.C. 585, 594, 86 S.E.2d 466, 470 (1955). While "[t]he Legislature has the right to vest in the administrative officers and bodies of the state a large

measure of discretionary authority ... to make rules and regulations," an agency may not make rules that "conflict with, or ... change in any way the statute conferring such authority." *Fisher v. J.H. Sheridan Co., Inc.*, 182 S.C. 316, 326, 189 S.E. 356, 360 (1936). Accordingly, an agency does not have the power to convert a right that is merely statutory into a contractual right. *McKinney v. S.C. Police Officers Ret. Sys.*, 311 S.C. 372, 375, 429 S.E.2d 797, 798 (1993).

Therefore, to fully address Retirees' argument that the Retirement Systems created a contract by filling up the details of the statute, it is necessary to examine this Court's basis in *Layman* for determining that the legislature intended to create a contractual right in the TERI statute, but did not intend the same when drafting the Working Retirees statutes.

 Ordinarily, statutes do not create contractual rights. *Layman,* 368 S.C. at 637, 630 S.E.2d at 268. In South Carolina, the legislature may only create contractual rights in a statute through the express language of the statute. *Id.* at 638, 630 S.E.2d at 268. This Court found in *Layman* that the old TERI statute outlined the rights and responsibilities of each party. *Id.* at 639, 630 S.E.2d at 269. In exchange for the right to lock in a retirement benefit based on the average final compensation of the member, "a program participant *shall agree* to continue employment with an employer participating in the system for a program period, not to exceed five years." S.C.Code Ann. § 9–1–2210(A) (Supp.2001) (emphasis added). During this term of employment, the receipt of retirement benefits was deferred, and placed in a non-interest bearing trust account. *Id.* § 9–1–2210(B). A program participant was not required to make any further retirement contributions, accrued no service credit, and was not eligible to receive certain employment benefits. *Id.* § 9–1–2210(D). This Court found the following terms used in the old TERI statute as "indicative of a contract: 'A ... member who is *eligible* [to retire under TERI] ... and *complies* with the *requirements* of this article .... *shall agree* to continue employment....'" *Layman,* 368 S.C. at 639, 630 S.E.2d at 269 *(quoting* S.C.Code Ann. § 9–1–2210(A)) (emphasis added).

In contrast, this Court found that the General Assembly did not outline the rights and responsibilities of each party in the

SCRS statute. *See* S.C.Code Ann. § 9-1-1790(A) (Supp.2001). The SCRS statute provided that sixty days after a state employee officially retires, he *"may* return to employment covered by the system and earn up to fifty thousand dollars a fiscal year without affecting the monthly retirement allowance he is receiving from the system." *Id.* (emphasis added). Under this statute, an employee's decision to return to work after retiring was optional, as was an employer's decision to re-hire that employee. The question of whether the PORS statute created a contractual right was not before this Court in *Layman.* However, because the language of the PORS statute is largely similar to the SCRS statute,[7] we find our analysis of the SCRS statute in *Layman* to be binding precedent with regard to the PORS statute.

With this in mind, we disagree with Retirees' contention that the Retirement Systems filled up the details and created binding contracts between the State and Retirees through the use of signed forms. The various forms that were required to be signed by employees wishing to enter the old working retirees program contained substantially the same language:

> I hereby notify you that I am an employee of the State of South Carolina or its political subdivisions, and that I meet the requirements not to become a member of the South Carolina Retirement System or the Police Officers Retirement System, and I hereby exercise my option to become a non-member.

> I take this action under the provisions of the Retirement Act with full knowledge that I will not be credited with retirement service for this period of employment since I have elected nonmembership and, as such, will not be making retirement contributions.

Retirees argue that the language of these forms is contractual in nature and is similar to the language used in the TERI statute. However, we believe the language used in the form supports the contrary. The form states that the authority to enter the working retiree program is derived from "the provi-

---

7. Section 9-11-90(4)(a) provides, in pertinent part, "a retired member of the system who has been retired for at least fifteen consecutive calendar days may be hired and return to employment covered by this system ... without affecting the monthly retirement allowance he is receiving from this system."

sions of the Retirement Act"—the statute that this Court held in *Layman* did not create a contractual right. *See Layman,* 368 S.C. at 643, 630 S.E.2d at 271.

Even assuming these forms, on their own, were binding contracts, we do not believe that the Retirement Systems had the authority to create contracts without the statutory directive of the legislature. In *McKinney v. South Carolina Police Officers Retirement System,* this Court decided this exact issue. 311 S.C. 372, 429 S.E.2d 797 (1993). In that case, the PORS terminated the plaintiff's retirement benefits, finding that the plaintiff did not establish twenty-five years of creditable service as required by the statute. On appeal, the plaintiff argued that certain correspondence from the Retirement Systems created a binding contract entitling the plaintiff to benefits not authorized by the statute. *Id.* This Court found that the source of the plaintiff's right "is the statutes, not a contract," and that neither the plaintiff nor the PORS "have the authority to convert a statutory right into a contractual one." *Id.* at 375, 429 S.E.2d at 798. Despite the dissent's contention that the facts of *McKinney* do not apply here, we believe the important premise that an agency cannot convert a statutory right to a contractual right maintains in this case. Any other holding would permit an executive agency to usurp the essentially legislative function of amending laws by binding the legislature through contract where it had no intention of being bound. We cannot support such a result.

Additionally, in stating there is no basis for treating the TERI statute and the Working Retirees statutes differently, the dissent overlooks important distinctions that weighed heavily on our determination in *Layman* that the TERI statute created a contract and the SCRS statute did not. Employees who retired under TERI were *required,* as a condition of their retirement, to continue employment with an employer participating in the TERI system for the program period. S.C.Code Ann. § 9-1-2210(A) (Supp.2001). Importantly, state employees who retired under the Working Retirees statutes were not bound by this same obligation. Under those statutes, when an eligible employee retired, that employee had the option of returning to employment after having retired for sixty days or fifteen days (depending on the statute); and even their return was conditioned on whether an

employer in the system chose to hire that employee. *Id.* § 9–1–1790(A) (Supp.2001) & 9–11–90(4)(a) (Supp.2002). The dissent claims that the Working Retirees statutes constituted a valid offer to eligible participants that was then accepted by the signing of Election of Non–Membership forms. We respectfully disagree. Because there was no guarantee of rehire, and because these retirees were under no obligation to return to work after retirement, we view the language of the Working Retiree statutes as providing a mere option to retirees, rather than an offer. Additionally, the TERI statute specifically provided in its text that "a program participant makes no further employee contributions into the system." *Id.* § 9–1–2210(D). The Working Retirees statutes are void of this express guarantee that retirement contributions would not be required. With an absence of consideration in the Working Retirees statutes, these statutes provide no framework to which a contractual right can attach. *See Alston v. City of Camden,* 322 S.C. 38, 45, 471 S.E.2d 174, 177 (1996) ("South Carolina law is clear that public employees generally have no contractual rights in their employment merely by virtue of a statute describing the terms of that employment.").

## II. Estoppel

■■■ The State argues that the circuit court erred in holding that the Retirement Systems were estopped from applying Act 153 to Retirees because, under these circumstances, estoppel cannot lie against the State, and because the Retirees failed to establish the elements of equitable estoppel. We agree.

### A. Estoppel Against the State

■■■ Generally, "estoppel will not lie against a governmental body for the unauthorized acts of its officers and agents." *Townes Assoc., Ltd. v. City of Greenville,* 266 S.C. 81, 87, 221 S.E.2d 773, 776 (1976). However, under certain circumstances, the State can be subject to the estoppel doctrine. *Id.* When agents or officers of a governmental body act within the proper scope of their authority, the government "cannot escape liability on a contract within its power to make." *Id.* Additionally, the government may be estopped in matters that do not affect the exercise of its police power or

the application of public policy. *Grant v. City of Folly Beach,* 346 S.C. 74, 81, 551 S.E.2d 229, 232 (2001).

In determining whether an agent of the State acted within its authority, the law is clear that "[a] public officer derives his authority from statutory enactment, and all persons are in law held to have notice of the extent of his powers, and therefore, as to matters not really within the scope of his authority, they deal with the officer at their peril." *Baker v. State Highway Dep't,* 166 S.C. 481, 490, 165 S.E. 197, 201 (1932), *rev'd on other grounds by McCall by Andrews v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

The record is replete with testimony that Retirement Systems agents told Retirees that upon entering the working retiree program, they would not be required to make contributions to the system. These agents were, no doubt, representing the law as it stood at the time. However, even if this Court found that the Retirement Systems and its agents made representations that caused the Retirees to prejudicially rely, because this Court has ruled that the Working Retiree statute did not create a binding contractual right, estoppel cannot lie against the state, as these representations were made outside of the agency's authority. Therefore, we reverse the circuit court's estoppel holding.

## B. The Elements of Estoppel

Although the issue of estoppel may be disposed of under the State's first argument, for purposes of clarifying the necessary elements to prove estoppel against the government, we address this issue and find that Retirees failed to sufficiently prove these elements. "To prove estoppel against the government, the relying party must prove (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance upon the government's conduct, and (3) a prejudicial change in position." *Grant,* 346 S.C. at 80–81, 551 S.E.2d at 232. In concluding that the State was estopped from requiring retirement contributions from Retirees, the circuit court judge applied a six element test derived from *Brading v. County of Georgetown,* 327 S.C. 107, 114, 490 S.E.2d 4, 7 (1997). Because the *Grant* elements have

been specifically applied by this Court to claims against the government, we believe it is the appropriate test in this case.

As to the first element, it is uncontested that the Retirement Systems provided forms, brochures and, in some cases, made oral statements representing that when the Retirees returned to work, they would not be required to make retirement contributions. However, it is difficult for Retirees to claim they did not know, or had no means of knowing that these terms would ever change.

The form signed by many of the Retirees required them to attest their understanding that the terms of the working retiree program derived from the Retirement Act. Since the Retirement Act was enacted, the SCRS statute has been amended 29 times and the PORS statute 27 times. In fact, several Retirees testified that they were at least aware that laws could change, and nearly all of the Retirees whose testimony is included in the record stated that they never specifically asked a Retirement Systems agent if the law regarding contribution requirements could ever change.[8] While the majority of amendments to the Retirement Act have afforded working retirees more favorable terms, we do not believe this means that more favorable terms should be legally expected.

In further support that Retirees had knowledge that the terms of the Working Retirees statutes could change, the Retirement Systems regularly published a pamphlet containing an overview of retirement benefits with the following disclaimer:

The information contained in this brochure is meant to serve as a guide, but does not constitute a binding representation of the South Carolina Retirement Systems. The statutes governing the South Carolina Retirement Systems are found in Title 9 of the South Carolina Code of Law, and should there be any conflict between this brochure and the statutes, the statutes will prevail. Because state statutes

8. The record does not include the testimony of all 23 named plaintiffs. The burden of proving the elements of estoppel, however, lies with its proponent. Retirees have not submitted any information that precludes the finding that Retirees had knowledge, or the means to gain knowledge, that the provisions of the Retirement Act were subject to change.

are subject to change by the South Carolina General Assembly, please contact us for the most current information.

Finally, even if the Retirees were not aware that the terms of the Working Retiree statutes could change, "citizens are presumed to know the law and are charged with exercising 'reasonable care to protect their interests.' " *Morgan v. S.C. Budget & Control Bd.*, 377 S.C. 313, 320, 659 S.E.2d 263, 267 (Ct.App.2008) *(quoting Smothers v. U.S. Fidelity & Guar. Co.*, 322 S.C. 207, 210–11, 470 S.E.2d 858, 860 (Ct.App.1996)).

Second, Retirees did not prove justifiable reliance on representations made by the Retirement Systems. The testimony among the named plaintiffs is varied with regard to whether or not they would have retired had they known they would be required to make retirement contributions without accruing additional service credit. For many of the named plaintiffs, the motivating factor for retiring was the promise of receiving two sources of income, and they stated they would have retired nevertheless. Still, others avidly contended that if they had known contributions would be required, they would not have retired when they did.[9] The presence of reliance in these latter cases, however, is not dispositive unless that reliance was justified. Recognizing the well-established rule that citizens are presumed to know the law and are charged with using care to protect their interests, we find that any reliance created by the representations of the Retirement Systems was not justified; especially in light of the disclaimers included in the Retirement Systems' distributed material, and the Retirees' knowledge that laws are subject to change.

Lastly, we find that any reliance created by the forms, brochures, or statements of the Retirement Systems and its agents did not cause a prejudicial change in position. We sympathize with Retirees' argument that if they had continued working as non-retired employees, the contributions made to the Retirement Systems would have increased the retirement benefits they would eventually receive. However, a comparison of the two options, either entering the working retiree program or continuing with employment, reveals that the mone-

9. Nancy S. Ahrens, Ann Mercer, James B. Arnold, Jamie Harrelson, Johnnie R. Deas, Dan Furr, and Marion E. White, Jr. all testified to this effect.

tary benefit of having five years additional service credit is minimal when compared to the effect of simultaneously receiving a salary and a retirement allowance. Therefore, we find that any change in position caused by the alleged misrepresentation was not prejudicial to the Retirees.

The amount of retirement allowance that an SCRS retiree receives is set by statute at "one and eighty-two hundredths percent of his average final compensation, multiplied by the number of years of his credible service." S.C.Code Ann. § 9–1–1550(B)(1) (Supp.2009).[10] To demonstrate this point, assume that Employee A and Employee B both work for the State making $40,000 per year and with 28 years of service credit. If Employee A becomes a working retiree, during the five year period of the program he would receive $101,920 in retirement benefits,[11] in addition to his salary. In the five years after Employee A discontinues working he will receive another $101,920 in retirement allowances for a ten year total of $203,840 in retirement benefits. Under the second scenario, Employee B does not retire and accrues five additional years of service credit and merit pay increases of two percent per year. With 32 years of service credit and an AFC of $44,163, Employee B will receive $128,603 in retirement allowances in the five years following retirement,[12] as compared to the $203,840 that Employee A has received in retirement benefits up to the same point in time.[13] In fact, it would take twenty-five years for Employee B to receive a higher lifetime retirement benefit than Employee A. In our opinion, a preju-

---

**10.** The PORS uses a different calculation; however, plugging the PORS denominator for a Class Two employee into the following scenario yields similar results. *See* S.C.Code Ann. § 9–11–60(2)(a)–(c) (Supp. 2009).

**11.** We assume that the Average Final Compensation (AFC) of Employee A is $40,000, and we arrive at this five year retirement allowance total as follows: 28 year service credit × .0182 (statutory multiplier) × $40,000 AFC × 5 years.

**12.** 32 years × .0182 (statutory denominator) × $45,470 (AFC) × 5 years.

**13.** Notably, this demonstration does not take into account cost of living adjustments that are calculated each year to increase retirement allowances. However, these being consistent among each employee, we do not believe it substantially affects the analysis.

dice that takes twenty-five years to occur, if at all, does not merit an estoppel holding.

Therefore, we do not believe the Retirees adequately proved the elements of estoppel. Consistent with our holding with regard to estoppel against the state, we reverse the circuit court's estoppel order and find that the State is not required to return contributions previously deducted.

## III. Certifying the Class

The State argues that the circuit court erred in certifying the class of Retirees for three reasons: (1) this Court decertified the class definition that the circuit judge ultimately certified, (2) on the merits, the prerequisites of a class action have not been satisfied, and (3) class treatment is not appropriate for claims based on estoppel. Because we conclude that the named plaintiffs have neither a contractual nor an equitable remedy, we decline to address these issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not address remaining issues when disposition of prior issue is dispositive).

## IV. Summary Judgment on Additional Causes of Action

Retirees argue that the circuit court erred in granting summary judgment to the State on the issues of unconstitutional taking, violation of due process, impairment of contract, and quantum meruit. Claims of unconstitutional taking, violation of due process, and impairment of contract are founded on the presumption that a contractual right has been unfairly taken away. Because we find that the Retirees did not have a contractual right to the terms of their employment, we find it unnecessary to address these constitutional issues. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598.

Further, Retirees raised the issue of quantum meruit, but failed to argue it in their brief. An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court. *State v. Hiott*, 276 S.C. 72, 86, 276 S.E.2d 163, 170 (1981).

Therefore, we affirm the circuit court's grant of summary judgment on these issues.

## V. Exhaustion of Remedies

The State argues that the circuit court lacked the statutory authority to hear Retirees' claims because the Claims Procedures Act, S.C.Code Ann. § 9–21–10 *et seq.* (Supp.2009), provides the "exclusive remedy for dispute or controversy between the retirement systems and a member ... arising pursuant to or by virtue of Title 9 of the Code of Laws of South Carolina, 1976." S.C.Code Ann. § 9–21–30. Because we rule in favor of the State on both issues of contract and estoppel, we presume that the State will withdraw this issue.

## CONCLUSION

We hold that a contract did not exist between the State and Retirees, neither by way of forms signed nor representations made. Accordingly, we conclude that summary judgment was proper as to the constitutional issues raised by Retirees because those issues are premised on the existence of a contract. Additionally, we find the circuit court's estoppel holding to be in error.

**AFFIRMED IN PART; REVERSED IN PART.**

BEATTY, KITTREDGE, JJ., and Acting Justice James E. Moore, concur.

HEARN, J., dissenting in a separate opinion.

Justice HEARN.

I concur in the majority's resolution of the issues of estoppel, class certification, summary judgment as to the additional causes of action, and exhaustion of remedies. However, I part company with the majority on whether a contract existed and respectfully dissent. In my view, the old working retirees statutes, together with the mandatory forms signed by the working retirees, created a binding contract between the State and the working retirees which could not be unilaterally rescinded by the State with the passage of Act 153.

In its simplest terms, a contract is formed when a legitimate offer is accepted, accompanied by a valuable consideration. Here, the original working retiree statutes permitted participants to retire, return to work for the State, and continue to

receive their retirement. The only retirement contributions required were those by the employer: "An employer shall pay to the system the employer contribution for active members prescribed by law with respect to any retired member...." S.C.Code Ann. § 9–1–1790(B) (as amended through 2004); *see also id.* § 9–11–90.

The old working retirees statutes thus constituted an offer to eligible program participants to retire, be re-hired, and receive their retirement benefits without contributing any further payments into the retirement system. While this Court in *Layman v. State,* 376 S.C. 434, 658 S.E.2d 320 (2008), quite rightly found the old working retirees statutes did not in and of themselves establish a contract, they most certainly constituted a legally significant offer to those qualified for the program.

In order to return to work and accept the offer contained in the old working retirees statutes, participants were required to sign a form stating their election of non-membership in the retirement system. The Participating Employer Procedures Manual, published by the South Carolina Retirement Systems, states that "[a] service retiree (TERI or non-TERI) ... must complete an Election of Non–Membership (Form 1104) upon returning to work for an employer covered by the Retirement Systems." This mandatory form, entitled "ELECTION OF NON–MEMBERSHIP," stated: "I take this action under the provisions of the Retirement Act with full knowledge that I will not be credited with retirement service for this period of employment since I have elected non-membership and, as such, will not be making contributions."

When signed by the participant and his employer, this mandatory form constituted the participant's acceptance of the State's offer of re-employment contained in the working retirees statutes. The benefits flowing to the State from being able to re-hire experienced workers without having them accrue additional retirement benefits and the detriment to the participants in foregoing further retirement benefits from the State clearly satisfied the requirement of consideration for the formation of a binding contract.[14] *See McLeod v. Sandy*

---

14. As stated by Cy Wentworth, the Human Resources Manager for the South Carolina Judicial Department, himself a working retiree: "The

*Island Corp.*, 265 S.C. 1, 13, 216 S.E.2d 746, 751 (1975) (citing *Furman University v. Waller*, 124 S.C. 68, 117 S.E. 356 (1923)) ("A valuable consideration may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.").

There is nothing in the form which the working retirees had to execute prior to re-hiring that indicates their election of non-membership in the retirement system was anything other than permanent. Indeed, Peggy Boykin, head of the South Carolina Retirement Systems, testified that if "[the working retirees] retired prior to July 1, 2005, they did not have to make any contributions." The old adage that the proof is in the pudding hits the bulls-eye here, given the undisputed fact that not one of the working retirees who executed the form and returned to work prior to the passage of Act 153 had any monies taken out of their paychecks. All parties—the working retirees, their State employers, and the State retirement system—all recognized that a legally binding contract existed.

As this Court correctly stated in *Layman:* "Once the bargain is formed, and the obligations set, a contract may only be altered by mutual agreement and for further consideration." 368 S.C. at 640, 630 S.E.2d at 269. Consistent with *Layman*, I would hold that the State may not unilaterally alter its agreement with the working retirees by forcing them to contribute to the retirement system. With all due respect to the majority, I cannot, in good conscience, treat the working retirees differently than this Court treated the TERI participants in *Layman*.

Nor do I agree with the majority's reliance on *McKinney v. South Carolina Police Officers Retirement System*, 311 S.C. 372, 429 S.E.2d 797 (1993), for the proposition that no viable contract could be formed through execution of the forms here. *McKinney* held that certain correspondence from the state retirement system could not create a binding contract with the plaintiff for benefits not authorized by the statute. *Id.* at 375,

employee agreed to retire and not make any further contributions to the Retirement System and the State continued to be able to employ a seasoned, experienced employee for a cost which saved the State money."

429 S.E.2d at 798. That is a totally different situation than what is presented here where the retirement system generated forms to carry out the intent and purpose of the original statutes, and the participants were required to execute those forms prior to being rehired. While I agree with the reasoning expressed in *McKinney* that mere letters from the retirement system could not provide benefits not authorized by statute, I am at a loss to see its application to the facts of this case.

Consistent with the principles enunciated in *Layman*, I would hold that the State created a binding contract with the working retirees through its unambiguous statutory scheme and the participants' execution of mandatory forms which could not be altered unilaterally by the State to the detriment of the working retirees.