# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Basilides F. Cruz, Joseph A. Floyd, Sr., Arthur C. Gillam III, Alma C. Hill, Barry N. Martin, Charles F. Morris, Sr., and Joseph A. Smith, Petitioners,

v.

City of Columbia, Respondent.

And

Larry Strickland, Denious L. Dimery and Bailey G. McClinton, Petitioners,

v.

City of Columbia, Respondent.

Appellate Case No. 2022-001494

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal From Richland County
R. Scott Sprouse, Circuit Court Judge,

———

Opinion No. 28216
Heard April 17, 2024 – Filed July 17, 2024

———

## AFFIRMED AS MODIFIED

Lucy Clark Sanders and Nancy Bloodgood, both of Bloodgood & Sanders, LLC, of Mt. Pleasant; Susan K. Dunn, of Charleston; and Christopher James Bryant, of Columbia, all for Petitioners.

W. Allen Nickles, III, of Nickles Law Firm, of Columbia, and Jacqueline Marie Pavlicek, of Columbia, both for Respondent.

**JUSTICE HILL:** Petitioners are ten retired City of Columbia firefighters seeking to hold the City to what they contend was a promise to provide them free health insurance for life. Petitioners' legal journey reaches us after traveling two paths. The first path began in 2009 when several of the Petitioners sued the City after the City Council voted to require all active and retired employees under the age of sixty-five participating in the City's group health plan to contribute a part of the cost of the premiums. Judge Barber granted the City summary judgment, but the court of appeals reversed, finding Petitioners' promissory estoppel claim could proceed, and remanded that claim. *Bishop v. City of Columbia*, 401 S.C. 651, 738 S.E.2d 255 (Ct. App. 2013). We declined the City's petition for certiorari.

The second path started in 2013, while *Bishop* was awaiting trial after the remand. In that year, the City Council extended the premium contribution requirement to Medicare supplemental coverage for all retirees over the age of sixty-five. This extension triggered another lawsuit by several of the Petitioners.

The two lawsuits were consolidated for nonjury trial before Judge Sprouse. Petitioners' sole theory was that the doctrine of promissory estoppel barred the City from charging anything for health insurance coverage. Judge Sprouse ruled for the City. The court of appeals affirmed, holding Petitioners' promissory estoppel claim failed because they did not establish the City had made an unambiguous promise of free lifetime health insurance on which Petitioners could reasonably rely. *Cruz v. City of Columbia*, 437 S.C. 204, 877 S.E.2d 479 (Ct. App. 2022).

This time, we granted certiorari to address the issue of the City's liability under promissory estoppel. We affirm the court of appeals decision as modified.

## I.

Because promissory estoppel is an equitable doctrine, our scope of review allows us to view the evidence anew and reach our own conclusions about what facts the evidence establishes. *Inlet Harbour v. S.C. Dep't of Parks, Rec. & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008).

## II.

Born of equity, the doctrine of promissory estoppel enables a party to enforce an obligation against another even when one of the formal requisites of a contract is missing. The doctrine is designed for the rare instance when equity's aid is necessary to prevent the rank injustice that would ensue if a party could avoid being held to a clear promise he made on which the other party foreseeably and reasonably relied to his detriment. The essential elements of promissory estoppel are:

> (1) [T]he presence of a promise unambiguous in its terms, (2) reasonable reliance upon the promise by the party to whom the promise is made, (3) the reliance is expected and foreseeable by the party who makes the promise, and (4) the party to whom the promise is made must sustain injury in reliance on the promise.

*Thomerson v. DeVito*, 430 S.C. 246, 255–56, 844 S.E.2d 378, 383 (2020).

Petitioners invoke the doctrine of promissory estoppel to enforce the City's alleged promise of free lifetime health insurance. They claim City employees made the promise verbally and in newsletters and retirement letters the City sent them.

The court of appeals disagreed, holding any promise by the City to this effect was ambiguous because the details concerning the scope of the insurance offered were not sufficiently specific. The court of appeals further held Petitioners had not proven reasonable reliance on the City's promise because the retirement letters stated only that the City's "current" policy was to provide free health insurance. We affirm the court of appeals but reach our conclusion by different reasoning.

In our view, Petitioners have not proven the City promised them anything other than that their health insurance coverage requirements might change. But more importantly, Petitioners had no right to rely on the verbal or written statements made by City employees. There is no evidence these employees had actual authority to bind the City on matters dealing with future health insurance benefits.

The City of Columbia is governed by the council-manager form of government. Under this form, "[a]ll legislative powers of the municipality and the determination of all matters of policy shall be vested in the municipal council . . . ." S.C. Code Ann. § 5-13-30 (2004). Only the City Council—not the City Manager or any other City employee—has the power to adopt the City budget. S.C. Code Ann. § 5-13-30(3); *Todd v. Smith*, 305 S.C. 227, 231, 407 S.E.2d 644, 646–47 (1991) (holding city manager under council-manager form of government had no authority to set city policy nor could manager's "acts be said to represent official policy in view of the legislative authority granted to the municipal council" by § 5-13-30). The decision to enter a group health insurance plan and make the benefits part of an employee's compensation is part of the budgeting process and, therefore, a legislative act. *See Functions of council—Legislative*, 4 McQuillin Mun. Corp. § 13:4 (3d ed. 2023).

There is no dispute that neither Petitioners' supervisors nor the City's human resources employees had the authority to promise free lifetime health insurance to Petitioners. Such a decision could only be made by the City Council. The record demonstrates that several Petitioners understood it was the City Council's exclusive prerogative to set such benefits and that the "current" policy could change. When the policy did change, Petitioners had no right, under promissory estoppel or otherwise, to remain under the old policy. This was the conclusion Judge Barber reached in his well-reasoned order, and it is the conclusion we reach today. To the extent *Bishop* conflicts with this conclusion, it is overruled.

We understand how Petitioners—who faithfully dedicated their working lives as first responders protecting public safety—could believe they had been at best misled about the cost of insurance benefits they could look forward to at retirement. We also understand how they might believe that equity, through the doctrine of promissory estoppel, should step in and hold the City to what they perceive to be the City's word.

But equity's force wanes when it seeks to impose obligations on public bodies, funded as they are by the taxpayers. Both law and equity agree that when it comes

to legislative acts and policy decisions, a public body speaks with one voice. Here, that voice is the City Council.

Although this case concerns promissory estoppel, and not its cousin equitable estoppel, estoppel in general is subject to limiting principles. One of these principles is that a public body may not generally be estopped to deny liability for the statements or conduct of its agents unless the agent acted within the scope of their actual authority. *Ahrens v. State*, 392 S.C. 340, 352, 709 S.E.2d 54, 60 (2011). A public body may also, under certain circumstances, be estopped "in matters that do not affect the exercise of its police power or the application of public policy." *Id.* at 352–53, 709 S.E.2d at 60.

Here, the statements on which Petitioners rely were made by public employees who were not authorized to bind the City. The statements concerned public policy the speakers were powerless to create. Like any citizen dealing with the government, Petitioners were charged with notice of the limits of a public employee's actual authority. When they chose to rely on statements exceeding those limits, they did so at their peril, a peril beyond equity's rescue.

The Supreme Court of Illinois has decided a remarkably similar case the same way using the same reasoning. *Matthews v. Chicago Transit Auth.*, 51 N.E.3d 753, 780–82 (Ill. 2016) (rejecting employees' promissory estoppel claim against Chicago Transit Authority to continue providing retirees free lifetime health insurance, stating a "CTA employee cannot act in such a manner as to form a contract without the approval of the Chicago Transit Board . . . . [T]he CTA can only be contractually bound by official action taken by the Chicago Transit Board").

Some may see this result as at odds with the animating aim of promissory estoppel: to relax the formalistic fetters of contract law when necessary to prevent rank injustice. But the reason for the rule we are bound to apply here flows from a wider equitable source: the common good. If public bodies were liable under estoppel for missteps or misstatements of public employees acting outside of their statutorily defined roles, then public monies and public property would be at continuous risk. The law has long recognized the practical notion that it is better for private interests to bear the risk and yield to the public good in such unfortunate circumstances. *See Berkeley Elec. Co-op., Inc. v. Town of Mount Pleasant*, 308 S.C. 205, 210, 417 S.E.2d 579, 583 (1992) ("Restrictions on municipal power are created to protect citizens. Although it may seem harsh to deny Berkeley a remedy for impairment of its franchise, it is better that Berkeley suffer from the mistakes of Mount Pleasant

than for this Court to adopt a rule which, through improper combination or collusion, could be detrimental or injurious to the public."); *Notice Imputed to one Contracting with Municipality*, 10 McQuillin Mun. Corp. § 29:4 (3d ed. 2023) ("[P]ersons dealing with a municipal corporation through its agent are bound to know the nature and extent of the agent's authority . . . . The doctrine of apparent authority is inapplicable in the context of a municipal contract . . . . A contrary doctrine would be fraught with danger." (internal footnotes omitted)).

We tack on a brief postscript. The court of appeals opinion quoted *Barnes v. Johnson*, 402 S.C. 458, 470, 742 S.E.2d 6, 12 (Ct. App. 2013), which states a party must prove promissory estoppel by "clear and convincing" evidence. We clarify today that—except in a case seeking specific performance of a land transfer, *see Satcher v. Satcher*, 351 S.C. 477, 483, 570 S.E.2d 535, 538 (Ct. App. 2002)—a promissory estoppel claim need only be proven by the greater weight of the evidence. *Barnes* is therefore abrogated to the extent it states the "clear and convincing" evidence standard applies to all promissory estoppel claims.

To sum up, we affirm the court of appeals' holding that Petitioners are not entitled to relief on their claim of promissory estoppel. However, we vacate the court of appeals' reasoning.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**